### HERCULE BRASSAC *v.* JOSEPH MARCEL DUCROS.

Where a wife has obtained against her husband, a judgment for the separation of property, and ascertaining the amount of her dotal and paraphernal rights, the creditors of the latter may still require her to prove her claims contradictorily with them, whenever they have reason to suspect that the separation has been made with a view to defraud them ; but they must put her on her guard by alleging fraud and collusion. Where no such allegation is made, she will not be bound to prove her claims *aliunde,* nor can the correctness of the judgment, or the sufficiency of the evidence upon which it was rendered be inquired into.

To secure a debt due to mortgagee, twelve lots of ground were mortgaged by the same act, but separately and specially, each lot as security for a fixed part of the debt ; and the wife of the mortgagor renounced all her rights, actions, privileges, and mortgages on them. An order of seizure and sale having been obtained, lot No. 1. sold for more than the part of the debt for which it was mortgaged, while all the others sold for less than the sums for which they were mortgaged. In a contest between the wife and mortgagee : *Held,* that the wife must be considered as having renounced her rights only to the extent of the mortgage on each lot ; and that the surplus realized by the sale of lot No. 1., cannot be claimed by the mortgagee, but must be applied to the satisfaction of the rights of the wife, after deducting its proportion of the costs of the sales, calculated according to the price it brought.

The decision in *Doubrere* v. *Grillier's Syndic,* 2 Mart. N. S. 171, that an act *sous seign privé* will have effect against third persons from its date, if possession accompanied or followed its execution, was made under the Code of 1808, and is inconsistent with the provisions of art. 2417 of the present Civil Code.

A wife who has renounced the community of *acquêts,* must be regarded as a third person in relation to sales of community property made during the marriage ; and every thing done during the marriage in relation to the sale or alienation of property, must be viewed as done by the husband alone.

APPEAL from the District Court of the First District, *Buchanan,* J.

MORPHY, J. The plaintiff sued out an order of seizure and sale under an authentic deed of mortgage, in which the defendant, to secure to him a loan of $5000, with interest at the rate of ten

per cent per annum, during five years, had mortgaged in his favor twelve lots of ground in the suburb Montegut, each lot being separately and specially mortgaged, for a fixed portion of the capital and interest of the loan. From the return of the Sheriff it appears, that the lot No. 1., situated at the corner of Montegut and Amour streets, which was mortgaged for $750 brought $1350 ; while the other lots, which were sold on a different day, brought each of them less than the amounts for which they were respectively mortgaged, and that the law charges for both sales, and the taxes due on the property amounted to a sum of $416,37. The wife of defendant, separated of property from him, took a rule on the plaintiff, the Sheriff, and the judgment creditors, to show cause why this surplus of $600 brought by the sale of the first lot over and above the amount for which it was mortgaged, should not be paid to her in partial satisfaction of a judgment she had obtained against her husband, in the Parish Court, for the sum of $4393. To this rule the plaintiff and the Sheriff alone answered, denying her right to receive the surplus claimed, in consequence of her renunciation in the act of mortgage, and of a claim set up by P. Marsondet, Esq. to one moiety of such surplus, averring that at all events, all the costs of the suit should be paid out of the proceeds of the first lot sold. P. Marsondet then moved for a rule on all the parties already in court ; and prayed, in opposition to the wife, that one-half of the surplus fund be paid over to him, as the half owner of the property. The two rules were consolidated and tried together. The Judge below dismissed the rule taken by the wife, and allowed to P. Marsondet the balance of the surplus fund, remaining after discharging out of it the costs and charges of every description. The former has appealed.

In support of her claim, the appellant produced on the trial, the record of a judgment she had obtained in the Parish Court against her husband for $4393, of which $4060 were pronounced to be the amount of her dotal property, and $333 the amount of her paraphernal property. This judgment having been received without opposition, and no suggestion of fraud or collusion having been made, it should have been considered good and sufficient evidence of the amount due to her. The creditors of the husband have the undoubted right of requiring the wife to prove

her claims against him contradictorily with them, whenever they have reason to suspect that the separation has been made with a view to defraud them ; but, in such a case, they must put her on her guard by alleging fraud and collusion. When no such allegation is made, the wife is not bound to prove her claims *aliunde ;* nor can the correctness of the judgment, or the sufficiency of the evidence upon which it was rendered, be inquired into. Such have been the uniform adjudications of this court on the subject. 1 Mart. N. S. 170. 8 Ib. N. S. 403 and 459. 1 La. 379. 4 La. 422. 14 La. 459. Under this view of the effect of the judgment obtained by the appellant, it becomes unnecessary for us to examine the several questions raised in the argument, in relation to the evidence upon which it was rendered. From a return made on a *fieri facias,* issued to the Sheriff of the parish of St Martin, in the case of Madame Ducros against her husband, it appears that a sum of $2101,50, was made by the sale of some property of the defendant's levied upon there, leaving yet due to her $2291,50.

It has been urged, that, having renounced in favor of the plaintiff, all her rights, mortgages, and privileges on the several lots of ground mortgaged to him, this renunciation, being general and unlimited, must extend to any amount each lot might bring, until the whole of the loan made by the plaintiff to her husband, be covered. Although the twelve lots of ground are mortgaged in one and the same act, the mortgage on each of them is as distinct, and special, as if twelve separate acts of mortgage had been executed. So it is with the renunciation of the wife, who must be considered as having renounced her rights in favor of the plaintiff, to the extent of his mortgage on each lot, in the same manner as she would have done, had each mortgage been executed separately. We, therefore, consider that she had yielded her right of priority to the plaintiff, only to the extent of his mortgage on the lot No. 1, and the costs necessary to carry the same into effect. But the judge below has thrown the entire amount of the costs and charges, of every description, on this lot in particular ; thus, taking the whole sum of $416 37 out of the surplus claimed by Madame Ducros, and leaving the proceeds of the other lots to be received by the plaintiff, free of any charge, whatever. Although there is but one suit, yet the mortgaged lots

having been sold separately, and there being several claimants for the proceeds of one of them, we think that this lot should be charged only with its proportion of the costs, according to the price it brought; besides, in the amount of $416 37, is included $89, due for taxes on the whole property, which should not, surely, be paid out of the proceeds of any particular lot.

P. Marsondet's claim is next to be considered. He alleges that he was the half owner of the property included in the mortgage upon which this suit is brought. And to make good his allega-tion, he has produced an act *sous seign privé* of the defendant, in which the latter acknowledges him to be proprietor for one undivided half of the same. This act purports to be dated on the 5th of June, 1836, the day after that on which the defendant pur-chased the property in his name alone, by authentic act; and does not appear to have been ever recorded in the office of the Re-corder of Conveyances.

The counsel for Madame Ducros contends; that, as to her, this act bears date only from the day that it was produced in court; that her husband could not be admitted as a wit-ness under oath against her; and that, therefore, his written declaration, unsupported by oath, and bearing date on the day of the trial below, can have against her no effect whatever. Di-vers acts of possession have been shown by Marsondet, with a view to bring his case within the doctrine laid down in *Doubrere* v. *Grillier's Syndic*, 2 Mart. N. S. 171, in which this court held, that an act under private signature will have effect against third persons from its date, if possession has accompanied or followed its execution. In relation to this decision it has been correctly remarked, that it was made under the provisions of the old Civil Code, and is inconsistent with, and contrary to the present Code, which provides (art. 2417,) that "the sale of immoveables or slaves, made under private signature, shall have effect against the creditors of the parties, and against third persons in general, only from the day such sale was registered in the office of a notary, and the actual delivery of the thing sold took place." But the counsel for the appellant relies mainly on the 5th section of the act, approved March 20th, 1827, creating the office of Register of Conveyances, which declares that, " Acts of transfer of property

whenever they are not registered agreeably to this law, whether they are passed before a notary public or otherwise, shall have no effect against third persons, but from the day of their being registered."

The inferior Judge was of opinion that the act under private signature, produced by Marsondet, was good and binding as against Madame Ducros, although not recorded, because she was not to be viewed as a third person. In support of this position, it is argued, that a sale of community property must be considered as made by the husband and wife both, and that the latter cannot pretend to be a third person in relation to it; that the acts of the husband, as the head and master of the community, are the acts of his wife, who, through his agency, acts in the same manner as if she were present at the sale. We are by no means prepared to adopt these views. They are founded on the idea of a legal partnership existing between the husband and the wife. Such a partnership does exist in contemplation of law, but only, we apprehend, when she accepts the community; if she renounces it, the community is, as to her, as though it never existed, and every thing done during the marriage in relation to the purchase or alienation of property, must be considered as done by the husband alone. If, although the wife renounces the community of *gains et acquêts*, she is to be considered as a party to all the acts of the husband, while he was the head of the community, her renunciation would be of no avail to her. It would follow, that she could exercise, in the prosecution of her rights, no recourse against the community property sold during the marriage, when there is nothing better settled in our jurisprudence than that she has such a recourse. 3 Mart. 392. 7 Ib. N. S. 69. 10 La. 198. *Johnson v. Pilster, ante,* 71.

In speaking of the effects of the renunciation, one of the most enlightened commentators of the Napoleon Code says: "*A la vérité, la femme, avant sa renonciation et au moment de la vente, était commune en biens. Mais il ne résulte pas de là qu'on puisse lui opposer qu'elle doit être considérée comme associée à la vente faite par son mari, seigneur de la communauté; car, au moyen de sa renonciation, elle est censée, n'avoir jamais été co-propriétaire, et par conséquent n'avoir jamais contracté par l'organe de son mari.*

"*Le droit du mari d'engager sa femme en vendant un acquêt, est essentiellement subordonné à la faculté qu'a celle-ci de renoncer à la communauté. Lorsque cette renonciation a lieu, tous les actes faits par le mari lui demeurent exclusivement personnels.*" Troplong, Priv. et Hypoth. 2 vol., No. 433*ter*, p. 88. We conclude, that, from the moment the appellant renounced the community, she became a third party to all the acts of her husband, done as head of such community: she stands in the position of all his other creditors, in relation to such acts; and that, therefore, the act under private signature, not having been recorded, as required by law, can have no effect against her.

It is, therefore, ordered that the judgment of the District Court be reversed. That the rule taken by P. Marsondet be dismissed, with costs; and, that of Madame Ducros be made absolute, and that she do, accordingly, recover such balance as may remain of the proceeds of a cash sale, made on the 8th of September, 1842, of lot No. 1 of the property herein seized, deduction being made of the plaintiff's mortgage, and interest thereon, and, of the proportion of the costs, and charges, to be borne by the said lot No. 1, according to the price it brought, compared with the aggregate amount, brought by the twelve lots, on which plaintiff had mortgages. The costs of this appeal to be borne by the appellees.

*Benjamin*, for the appellant.

*D. Seghers*, for the appellees.

*Marsondet, pro se.*