ANNE GOYNE MITCHELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JANE ISABELL GOYNE SIMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6740–66, 6741–66. Filed January 27, 1969.

*Paul K. Kirkpatrick, Jr.*, for the petitioners.
*Bruce A. McArdle*, for the respondent.

FORRESTER, *Judge:* In these consolidated cases respondent has determined the following deficiencies in identical amounts against Anne Goyne Mitchell, petitioner in docket No. 6740–66, and against Jane Isabell Goyne Sims, petitioner in docket No. 6741–66, as transferee of the assets of Anne Goyne Mitchell:

| Year | Income tax | Sec. 6651(a) | Sec. 6653(a) | Sec. 6654 |
|---|---|---|---|---|
| 1955 | $323.00 | $80.75 | $16.15 | 0 |
| 1956 | 1,267.73 | 316.93 | 63.39 | $35.49 |
| 1957 | 453.00 | 113.25 | 22.65 | 12.68 |
| 1958 [1] | 1,750.71 | 425.02 | 87.54 | 47.00 |
| 1959 [1] | 871.34 | 173.24 | 43.57 | 17.27 |
| | 4,665.78 | 1,109.19 | 233.30 | 112.44 |

[1] For the years 1958 and 1959 credit has been allowed for $50.65 and $178.37, respectively. These amounts represent withholding from wages.

## FINDINGS OF FACT

### General

Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Petitioner Anne Goyne Mitchell (hereinafter sometimes referred to as Anne) and petitioner Jane Isabell Goyne Sims (hereinafter sometimes referred to as Jane) each resided at Ruston, La., at the time of the filing of their respective petitions herein. Anne and Jane are sisters.

The issues for determination in docket No. 6740–66 are: (1) Whether Anne, on the basis of her interest in community property under Louisiana law, is liable for income taxes on a one-half portion of the community income for the taxable years 1955 through 1959, inclusive, and additions to the tax thereto under sections 6651(a),[2] 6653(a), and 6654; (2) whether joint and several assessments that were void and invalid against Anne for Federal income taxes and additions thereto for the years 1954 through 1959, and not abated by the respondent, prevented determination of the deficiency herein; and (3) whether Jane (docket No. 6741–66) is liable as Anne's transferee for the deficiencies determined against her.

For convenience and clarity, we shall deal with each of the above issues separately.

### Issue 1. Liability for One-half of the Community Income

#### FINDINGS OF FACT

On or about September 22, 1946, Anne married Emmett L. Mitchell, Jr. (hereinafter sometimes referred to as Emmett). Anne and Emmett were divorced on October 11, 1962.

During the existence of the marriage between Anne and Emmett, all of the income realized by either party was community income. Throughout the marriage of Anne and Emmett, finances were a constant source of trouble and controversy. At no time during the course of their marriage did Anne see her husband's paycheck or know how much money he made. Although Anne and Emmett had a joint bank account, and although Anne, with some degree of risk, drew checks on this account, she was rarely aware of the balances therein.

Sometime in or after 1952, while Anne and Emmett were residing at Monroe, La., Emmett rented a post office box and retained the only key. Subsequent to the rental of the post office box, no mail was delivered to the Mitchell's home. When the Mitchells moved to Ruston,

---

[2] All references herein are to the Internal Revenue Code of 1954, unless otherwise stated.

La., in 1956, Emmett again rented a post office box, and Anne was only aware of those bills and bank statements that Emmett chose to bring home. Emmett was financially irresponsible and Anne frequently attempted to bring to his attention those obligations she was aware of and that "needed to be taken care of in a financial way."

Anne was aware of her husband's fiscal irresponsibility, and repeatedly questioned him each year about the preparation of income tax returns. She believed that Emmett would file returns because of the consequences if he did not, which she assumed "would be immediate," but she was concerned about the returns being filed on time. Anne was led to believe that income tax returns were filed each year, because Emmett told her about getting help from Mr. Albritton, who was an accountant in Farmerville, Emmett's hometown; and securing the additional money allegedly needed to pay the taxes. Anne assumed not only that returns had been filed but that her signature had been affixed thereto by her husband. No income tax returns, however, were filed by either Anne or Emmett for the taxable years 1954 through 1959.

During 1955 and 1956 Anne was employed as a teacher by St. Paul's Methodist Church, receiving as salary (her community one-half) $1,350 and $750, respectively. Her actual receipts in such years were $2,700 and $1,500.

As a result of Emmett's continuing financial irresponsibility, Anne and Emmett began living separate and apart in July 1960. On or about August 4, 1961, Anne filed suit for separation from bed and board against Emmett, praying that, under Louisiana law, she be allowed to accept the community of acquets and gains with benefit of inventory. She was granted a separation from bed and board *a mensa et thoro*, against Emmett by default, on or about September 14, 1961. On September 18, 1961, she renounced the community of acquets and gains formerly existing between herself and Emmett, and on or about October 11, 1962, she was granted a judgment of divorce *a vinculo matrimonii*.

Upon the dissolution of the community of acquets and gains between Anne and Emmett, she received neither a distribution of community property nor a property settlement. Respondent, in his notice of deficiency, determined deficiences against Anne for one-half of the community income for the tax years 1955 through 1959, and additions thereto under sections 6651(a), 6653(a), and 6654.

## OPINION

In the case before us we are asked to decide whether in Louisiana, a community property State, one spouse is liable for the tax on one-half of all the income of the community irrespective of whose efforts pro-

duced the income for the community. In other words, in the absence of joint returns *must* one Louisiana spouse report one-half of the community income even though such income was earned by the efforts of the other spouse.

We hold that each spouse in Louisiana is responsible for tax on one-half of the community income regardless of whose efforts produced it.

In 1930, the U.S. Supreme Court decided that the community property laws in the States of Washington, Arizona, Texas, and Louisiana "entitled [a husband and wife] to file separate returns each treating one-half of the community income as his or her respective income." [3] *Poe* v. *Seaborn*, 282 U.S. 101 (1930) ; *Goodell* v. *Koch*, 282 U.S. 118 (1930) ; *Hopkins* v. *Bacon*, 282 U.S. 122 (1930) ; *Bender* v. *Pfaff*, 282 U.S. 127 (1930).

In *United States* v. *Malcolm*, 282 U.S. 792 (1931), the Court of Appeals for the Ninth Circuit had requested instructions from the Supreme Court on the following questions of law:

1. Under the applicable provisions of the Revenue Act of 1928 must the entire community income of a husband and wife domiciled in California be returned and the income tax thereon be paid by the husband?

2. Has the wife, under § 161(a) of the Civil Code of California such an interest in the community income that she should separately report and pay tax on one-half of such income?

In a per curiam opinion the Supreme Court answered the first question "no" and answered the second question "yes," citing *Poe* v. *Seaborn, supra; Goodell* v. *Koch, supra;* and *Hopkins* v. *Bacon, supra.*

Although *Poe* v. *Seaborn* and the related community property cases decided in 1930 stated that a husband and wife were entitled to file joint returns, it wasn't until our decision in *Paul Cavanagh*, 42 B.T.A. 1037 (1940), affd. 125 F. 2d 366 (C.A. 9, 1942), that it was decided she had a duty to return one-half of the community income. In *Cavanagh*, we interpreted both the decision of *United States* v. *Malcolm, supra,* and section 22(a) of the 1934 Revenue Act (now sec. 61), to hold that a wife in California could not, *at her option,* return one-half of the income of the community, stating at pages 1043–1044:

Gross income, as defined in section 22(a) of the Revenue Act of 1934, 48 Stat. 680, ch. 277, includes "income derived from * * * dealings in property, whether real or personal, growing out of the ownership or * * * interest in such property, * * * or gains or profits and income derived from any source whatever * * *." Such income must be reported by the individual to whom the statute attributes it. Clearly, therefore, the petitioner's wife is taxable on one-half of the community income. She is the owner thereof, although not entitled to

---

[3] For almost 18 years income earned by a spouse who was domiciled in a community property State enjoyed the tax benefits of income splitting. In 1948 Congress, realizing the patent inequities between the marital unit in a community property State and a common-law State, amended the 1939 Internal Revenue Code by adding what is presently sec. 6013.

present possession. This appears to be the inescapable conclusion to be drawn from the Supreme Court's opinion in the *Malcolm* case, *supra*.

Consequently, there is no longer the situation whereunder the wife may at her option return one-half of the income. Since she now must do so, it follows that the petitioner is taxable only on the other half of the entire community property. Therefore, as to the second issue in this proceeding the Board holds in favor of the petitioner.

Again in *Marjorie Hunt*, 22 T.C. 228 (1954), we held, under the community property laws of California, that a spouse was liable for taxes on her one-half of the community income.

In the instant case we are concerned with the community property laws of Louisiana. Petitioners argue that: (1) Under Louisiana community property laws the wife does not have a sufficient interest in the community property to make her liable for tax on one-half of its income; (2) Federal income taxes are community debts for which the husband is liable and a wife who renounces the community of acquets and gains is not liable for income taxes on community property; and (3) it would be unconstitutional to collect the community's taxes from a spouse who neither received community income nor voluntarily assumed the indebtedness.

We recognize that under the Louisiana community property system decisions may be found supporting the proposition that a wife has only an expectancy in the community property. See "Nature of the Wife's Interest During the Existence of the Community," 25 La. L. Rev. 159, 179–180 (1964); however, since the decision of *Phillips* v. *Phillips*, 160 La. 813, 107 So. 584 (1926),[4] the weight of authority in Louisiana has favored an ownership concept. *Bender* v. *Pfaff*, *supra*. We deem it proper to follow this authority. See *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967).

We think that the laws of Louisiana are overwhelming in their characterization of the wife's interest as more than a mere expectancy. The Louisiana Civil Code provides, *inter alia*, that "Every marriage * * * superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary";[5] that a wife may bring an action against the heirs of her husband for a fraudulent disposition of the common property;[6] that she may petition for a separation of property when, due to her husband's mismanagement, her dowry is in danger or when, because of the disorderly conduct of her husband's

---

[4] In this case the Supreme Court of Louisiana said, 107 So. at 588: "The wife's half interest in the community property is not a mere expectancy during the marriage; * * * The title for half of the community property is vested in the wife the moment it is acquired by the community * * *, even though it be acquired in the name of only one of them."

[5] La. Civ. Code Ann. art. 2399 (West 1951). *Messersmith* v. *Messersmith*, 229 La. 495, 86 So. 2d 169 (1956).

[6] La. Civ. Code Ann. art. 2404 (West 1951). *Thigpen* v. *Thigpen*, 231 La. 206, 91 So. 2d 12 (1956).

affairs, she believes that his estate may not be sufficient to meet her rights and claims.[7]

We find that petitioners' position on this point is untenable and accordingly we hold that in Louisiana a wife has such rights, claims, and powers in the property of the marital community as are equivalent to ownership, and that she is responsible for the tax on one-half of the community income.

Petitioners contend that Anne's renunciation of the community of acquets and gains, on September 18, 1961, exonerated her from liability for Federal income taxes. In support of such contention they refer us to articles 2410 and 2411[8] of the Louisiana Civil Code; *Stuffler* v. *Puckett*, 30 La. Ann. 811 (1878); and *Brassac* v. *Ducros*, 4 Rob. 335 (1843).

These cases and statutes stand for the proposition that a wife and her heirs or assigns may "exonerate themselves from the *debts contracted* during the marriage by renouncing the partnership or community of gains." (Emphasis supplied.)

The complete answer is that the income tax is not a *debt created by contract*, *Bender* v. *Pfaff*, 38 F. 2d 649 (C.A. 5, 1930), and further, that Anne's renunciation came long after her liabilities for the annual income taxes here in issue had attached. The wife in Louisana does not have an option to assume the tax liability resulting from the income of the community. *Smith* v. *Donnelly*, 65 F. Supp. 415, 417 (E.D. La. 1946); *Saenger* v. *Commissioner*, 69 F. 2d 633 (C.A. 5, 1934), affirming 28 B.T.A. 377 (1933); *Commissioner* v. *Hyman*, 135 F. 2d 49 (C.A. 5, 1943), affirming 46 B.T.A. 992 (1942).

Petitioners suggest that it would be unconstitutional to collect the community's taxes from a spouse who neither received community property, nor voluntarily assumed the indebtedness.

We are not unmindful that the Federal tax obligations of a wife in a community property State may be greater than those of her sister in a common-law State. But, this is not always the case for we hold only that the wife in a community property State must account for one-half of the community income, regardless of whose efforts produced such income.

---

[7] La. Civ. Code Ann. art. 2425 (West 1951). *Brown & Learned* v. *Smyth*, 40 La. Ann. 325, 4 So. 300 (1888).

[8] Art. 2410. Exoneration of wife or heirs by renunciation of community

Art. 2410. Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains.

Art. 2411. Rights of renouncing wife

Art. 2411. The wife, who renounces, loses every sort of right to the effects of the partnership or community of gains.

But she takes back all her effects, whether dotal or extradotal.

Over a third of a century has elapsed since the Supreme Court decided *Poe* v. *Seaborn, supra,* wherein the Court, in passing upon the constitutional aspects of splitting community income, stated at pages 117–118:

Finally the argument is pressed upon us that the Commissioner's ruling will work uniformity of incidence and operation of the tax in the various states, while the view urged by the taxpayer will make the tax fall unevenly upon married people. This argument cuts both ways. When it is remembered that a wife's earnings are a part of the community property equally with her husband's, it may well seem to those who live in states where a wife's earnings are her own, that it would not tend to promote uniformity to tax the husband on her earnings as part of his income. The answer to such argument, however, is, that the constitutional requirement of uniformity is not intrinsic, but geographic. * * * [citations] And differences of state law, which may bring a person within or without the category designated by Congress as taxable, may not be read into the Revenue Act to spell out a lack of uniformity. * * *

We find no reason why the constitutional precepts of *Poe* v. *Seaborn,* that were applicable in permitting community income to be split, should not be applicable in requiring the spouse to report and pay her tax on one-half of the community income.

In addition to the deficiency for one-half of the tax on the community income, respondent determined penalties against Anne under sections 6651(a) and 6653(a) for failure to file a tax return and for failure to pay the tax. Section 6651(a) provides for a 5-percent penalty per month of the tax due, but not in excess of 25 percent for failure to file a tax return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." We do not find willful neglect in the instant case; however, it is well settled that a penalty under section 6651(a) is avoided only when there is, in addition to the absence of willful neglect, a reasonable cause. *Charles E. Pearsall & Son,* 29 B.T.A. 747, 749 (1934).

Petitioners argue that Anne had reasonable cause and that she was "not negligent unless she was under some affirmative duty to doubt her husband and independently verify his statements." We are sympathetic to Anne's plight; however, we believe that she did not have reasonable cause. Anne neither saw the returns nor signed her name to them. It was certainly not reasonable simply to assume that her husband had signed her name to the returns, especially when she did not even attempt to verify the existence of said returns. As we said in *Leo Sanders,* 21 T.C. 1012, 1020 (1954), affd. 225 F. 2d 629 (C.A. 10, 1955), certiorari denied 350 U.S. 967 (1956):

A wife required to file a return because of income of her husband in a community property State or who joins in a joint return can not shed the responsibility for delinquency by saying that she relied entirely upon her husband, not a specially qualified tax authority; otherwise Congress would be frustrated in the purpose behind section * * * [6651(a)].

We find that Anne is also liable for the penalties imposed under section 6653(a). This section provides for a 5-percent penalty on a deficiency when said deficiency, resulting from an underpayment, is due either to "negligence or intentional disregard of rules and regulations (but without intent to defraud)." The penalty imposed under this section is upon the total underpayment even though only part of the underpayment is due to negligence,[9] and the burden of proving that no part of the underpayment was due to negligence is upon petitioner. *Terry C. Rosano*, 46 T.C. 681, 688 (1966).

Anne was under a duty to make either individual or joint income tax returns, secs. 6012 and 6013, and to pay a tax on her community one-half of the taxable income shown on these returns, secs. 1 and 2. Anne's failure to pay income taxes resulted from her failure to file returns and we have found that Anne demonstrated a lack of due care in assuming that her husband prepared and signed her name to these putative returns. Anne's conduct in failing to file income tax returns was also responsible for her failure to pay income taxes for the years in question. Therefore, we hold that Anne was negligent, and is liable for the 5-percent penalty on her share of the community income.

Respondent in his notice of deficiency determined that Anne was liable for additions to the tax under section 6654, which provides for an addition to the tax in the case of any underpayment of estimated tax by an individual. This section is mandatory unless certain exceptions (none of which are applicable in the instant case) relating to prior year's taxes, or payments, are complied with. It does not provide relief upon a showing of reasonable cause, lack of willful neglect, or extenuating circumstances. *Estate of Barney Ruben*, 33 T.C. 1071 (1960).

Anne does not come within any of the exceptions to section 6654 and is therefore responsible for additions to the tax under that section.

### *Issue 2.  Existence of a Deficiency*

#### FINDINGS OF FACT

Emmett and Anne did not file Federal income tax returns, either jointly or separately, for any of the taxable years 1954 through 1959. Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," covering these 6 taxable years was executed by Emmett on or about January 11, 1961. The execution of this form by Emmett permitted the Commissioner to make an assessment without complying with the time and notice (90 day) requirements of section 6213. The Federal income tax liabilities

---

[9] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

indicated on said Form 870 for all of the said taxable years were determined pursuant to the rates applicable to joint return filings. Predicated on the Form 870 executed by Emmett, Federal income taxes and penalties were jointly assessed on March 10, 1961, against both Anne and Emmett for the taxable years 1954 through 1959, inclusive.

The March 10, 1961, assessments were made without notice to, or the knowledge of Anne. Anne neither granted Emmett actual or implied consent nor authority or power to legally bind her to the Form 870. Anne neither acquiesced nor consented to being a participant or partner in the Form 870; nor did she consent or acquiesce to being obligated or bound by such Form 870 or any subsequent assessments thereunder.

Respondent concedes that the above joint and several assessments of Federal income taxes and additions to the tax, relative to the years 1954 through 1959 were invalid and void as against Anne.

Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," covering the taxable year 1954 was executed by Anne on August 4, 1965. Predicated on such waiver, the Federal income tax, penalties, and interest were individually assessed against her for the taxable year 1954 on August 16, 1965, in the amount of $550.87. On December 30, 1966, Anne filed a claim for refund for the above amount and on July 25, 1967, brought a refund action in the U.S. District Court for the Western District of Louisiana based upon her claim, which action is still pending.

On September 27, 1967, procedures of abatement were executed by the Internal Revenue Service with respect to the assessment of Federal income taxes, penalties, and interest, made on March 10, 1961, as it applied, in entirety, to Anne for the taxable years 1955 through 1959. On the same date, procedures of abatement were also executed by the Internal Revenue Service, with respect to the aforementioned assessment as it applied to Emmett, down to an amount which reflected the Federal income taxes, penalties, and interest against his one-half portion of the community income for the taxable years 1955 through 1959, inclusive.

### OPINION

Petitioners argue that no deficiency exists under section 6211 (Definition of a Deficiency) because the respondent failed to abate the assessment made against Anne on March 10, 1961, pursuant to the execution of the waiver agreement (Form 870) executed by her husband on January 11, 1961. Respondent agrees that the assessments made on March 10, 1961, were invalid and void as against Anne.

As we understand petitioners, it is their contention that the void assessment must be abated by the respondent under section 6404 before

there can be a valid deficiency under section 6211, since no deficiency can exist if the determination of the tax due is less than the amount previously assessed. We disagree.

As we read both the statute and the regulations promulgated under sections 6211 and 6404, we find that the Secretary or his delegate is not required to abate an invalid and void assessment in order to assert a deficiency. Of course there may be a question as to whether an assessment is invalid and void, but in the instant case petitioners and respondent are both in agreement on this point. "Section 6404 does not impose a duty on the District Director to abate improper assessments * * *. Its thrust is permissive, not mandatory." *Poretto* v. *Usry*, 295 F. 2d. 499, 501 (C.A. 5, 1961).

The fact that the assessment may have been valid against Emmett is of no consequence in the instant case, when Anne neither consented to the execution of Form 870 nor authorized Emmett to act on her behalf. Cf. *Marie A. Dolan*, 44 T.C. 420 (1965).

We hold that a valid and proper determination was made herein as against Anne.

### Issue 3.   Transferee Liability
#### FINDINGS OF FACT

Anniebel Taylor Goyne (hereinafter sometimes referred to as Anniebel), mother of Anne and Jane, died on November 5, 1964. On December 23, 1964, Anne conveyed all of the real estate inherited by her from her mother, to Jane.

On November 14, 1964, $2,402.78 was transferred from the account of Anniebel with the Ruston Building & Loan Association, to Anne's account with that same association. On December 23, 1964, Anne withdrew $2,676.81, the balance of her account, from the Ruston Building & Loan Association, and transferred to her sister, Jane, $1,721.21.

The above transfers to Jane were made without consideration, and there was no agreement between Anne and Jane for any retransfer.

On February 1, 1965, Anne executed Form 433-AB ("Statement of Financial Condition and Other Information") showing assets of $2,250 and liabilities of $1,081.20, exclusive of the deficiencies determined herein. A supporting statement to such Form 433-AB reads in part:

On December 23, 1964 [I] transferred to my sister, Mrs. Jane G. Sims, without consideration the following:

I. My undivided one-half interest in the following real property which was acquired by inheritance from my mother in November, 1964:

| Description | Value of my one-half interest in mother's succession |
|---|---|
| * * * * * * * | |
| Total value of real property | $9,550.00 |

II. Cash in savings account in Ruston Building & Loan Association, Ruston, La. $1,721.21.

The foregoing assets were transferred to my sister on the recommendation of my attorney who had just closed my mother's succession in November, 1964, approximately one month prior to receipt on December 19, 1964, of the Final Notice Before Seizure for 1954 income tax.

Prior to closing my mother's succession, I discussed with my attorney the matter of the income tax liability for 1954 through 1959. He advised that I could renounce my interest in the succession and thus pass my interest in mother's estate directly to my two children. However, as it had been over two years since I was contacted by Internal Revenue Agent, Deuel C. Smith, in regard to signing with my former husband on his Offer in Compromise, and I had heard nothing since, he felt that the matter was settled and therefore put me in possession. Then, after I received the Notice on December 19, 1964, he felt that to protect my interest, the foregoing assets should be transferred which would leave me in the same financial status as if I had renounced my interest in mother's estate.

### OPINION

Respondent in his notice of deficiency to Jane, determined that she was liable as a transferee of property from Anne for deficiencies in income taxes and the additions thereto determined against Anne for the taxable years 1955 through 1959.

Petitioners do not contest any of the basic facts, or Jane's liability as a transferee, except to argue:

[Anne's] transfer was of her separate property. Since the liability for income taxes on the community income was a community debt which she [Anne] could not be required to satisfy out of her separate property, in view of her non-acceptance of the community; her transfer of separate property to Mrs. Sims cannot be said to * * * [constitute her] a transferee.

This is the identical argument made by the petitioners in issue 1, and we reject it for the reasons there expressed. Jane's liability as transferee will be computed in conformity with our holdings on the other issues.

*Decisions will be entered under Rule 50.*