550 F.2d 844
 77-1 USTC P 9205
 Inslee A. HOPPER as Executor of the Estate of Gertrude
Thomas Gardner, Deceased, Appellant,
v.
GOVERNMENT OF the VIRGIN ISLANDS, and Reuben Wheatley,
Commissioner of Finance.
ESTATE of John Livingston THOMAS, by William W. Bailey, Executor
v.
Reuben B. WHEATLEY, Commissioner of Finance.
 No. 76-1904.
 United States Court of Appeals, Third Circuit.
 Argued Dec. 10, 1976.
Decided Feb. 8, 1977.
 
 William A. Pallme, Pallme, Anduze, Mitchell & Dow, Charlotte Amalie, St. Thomas, Virgin Islands, for appellant Inslee A. Hopper.
 Paul B. Kertman, Asst. Atty. Gen., Dept. of Law, Christiansted, St. Croix, Virgin Islands, for appellee Leroy A. Quinn.
 William W. Bailey, Bailey, Wood & Rosenberg, Charlotte Amalie, St. Thomas, Virgin Islands, for appellee Estate of John Livingston Thomas, deceased.
 Before SEITZ, Chief Judge, and GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 This appeal concerns the tax status to the beneficiary of payments received from a decedent's estate. Appellant Inslee A. Hopper, as executor of the estate of Gertrude T. Gardner, seeks review of an order of the District Court for the Virgin Islands redetermining a deficiency in the tax paid by decedent Gardner for taxable years 1967 through 1971.[1] We affirm in part, reverse in part, and remand the case to the District Court for the Virgin Islands for further proceedings.
 
 
 2
 John Livingston Thomas (Thomas) died on May 25, 1963. Article III of his Last Will and Testament directed his executor, William W. Bailey to pay $1,500 per month to Thomas' sister, Gertrude Thomas Gardner, until such time as his estate was finally adjudicated, provided she continued to live.[2] Those payments were made from 1963 until mid-1971, when Gertrude Thomas Gardner died.
 
 
 3
 The issues raised by this case first came to light in February, 1973, when the Estate of John Livingston Thomas filed its fiduciary tax returns for 1963-1972, inclusive. That estate claimed deductions from estate income for the sums paid out to Gardner. It characterized them as payments from income. Thus the real dispute is between Thomas' estate and Gardner's estate. One of them may have to bear the tax consequences of additional income of $1,500 per month for the period in question.
 
 
 4
 Initially, the Department of Finance made a determination that the beneficiary, Gertrude Thomas Gardner, was liable for the tax. Accordingly, it assessed those amounts against her estate on October 26, 1973, notified the Thomas estate that its returns were being accepted as filed, and issued a Notice of Deficiency to Gardner's executor, Inslee A. Hopper (appellant herein), on November 16, 1973. Subsequently, however, Max Kirchner, Technical Advisor for the Department of Finance was called upon to review both files since a statutory notice had been issued. He determined that there was no reason why the Government should bear the risk of the ultimate judicial characterization of these distributions. Thus a Notice of Deficiency was also prepared and sent to William W. Bailey, Esq., the executor of the Estate of John Livingston Thomas, on February 27, 1974. By following this multiple deficiency notification approach, Mr. Kirchner testified, the Government would be able to protect itself from the possibility of an adverse judicial ruling with respect to one of the potentially liable taxpayers.
 
 
 5
 While undertaking this review, however, Technical Advisor Kirchner unfortunately also discovered that the Department of Finance had committed several procedural errors in its handling of the Gardner case. With respect to tax years 1967 and 1968, Kirchner realized that Finance had made and entered certain assessments without first obtaining a Form 870 Waiver from the taxpayer or mailing a Notice of Deficiency and waiting the statutory period. With respect to tax years 1969, 1970, and 1971 (for which no returns had been filed), on the other hand, Kirchner noticed not only that the executed Commissioner's Returns had not been signed but also that assessments had been made and entered pursuant thereto without a Form 870 Waiver having been obtained or a Notice of Deficiency having first been mailed. For these reasons, the Technical Advisor believed the assessments to be illegal and invalid. Accordingly, he issued an inter-departmental memorandum on February 15, 1974 directing that the assessments be abated. Pursuant to this directive Notices of Adjustment were mailed out on February 20, 1974.[3] Moreover, in order to insure that there would be no misinterpretation about this abatement, Kirchner took the further step of writing a letter to Gertrude Gardner's accountant one week later, in which he specifically advised that the last date for the timely filing of a 33 V.I.C. § 943(a) Redetermination Petition would be March 8, 1974. Inslee A. Hopper's petition for the Gardner estate was filed on that date.
 
 
 6
 Four days, later, Hein Christensen, the accountant for both John Livingston Thomas and his estate, wrote Mr. Kirchner a letter protesting the estate's receipt of its "90 Day Letter," which communication was answered by the Technical Advisor on March 22, 1974. Following this, the Estate of John Livingston Thomas filed its own 33 V.I.C. § 943(a) Redetermination Petition on May 28, 1974. Eventually, the two cases were consolidated and the matter came on for hearing in the District Court of the Virgin Islands on Friday, November 28, 1975. After listening to the testimony of the four witnesses, the court specifically found, inter alia, "that the abatement did not go the entire tax liability but only to those assessments which they have now administratively determined had been erroneously made . . . ." In making such a determination, the court effectively ruled that the question was no longer whether the Government was entitled to the taxes it sought but instead which of the two taxpayers was liable therefor.
 
 
 7
 The district court issued a Memorandum Opinion several months later. It analyzed the problem in terms of 26 U.S.C. §§ 661 and 662 and characterized the Government as "sitting in the middle of the two Petitioners, with apron spread wide open." Final Judgment was entered on May 7, 1976. That Judgment (i) granted the Thomas Estate's petition in toto (ii) granted the Gardner Estate's petition insofar as it sought relief from the 25% penalty, but (iii) denied the remainder of that petition. This appeal followed.
 
 
 8
 The Government does not appeal from that part of the court's order granting the petition of the estate of John Livingston Thomas and granting that part of the petition of the estate of Gertrude Thomas Gardner which sought relief from the 25% penalty. In fact, it argues for affirmance in all respects.
 
 
 9
 Appellant Hopper argues that the tax liability of the Gardner estate has been extinguished by the notices of adjustment abating the assessments for the taxable years in question. This is an issue of first impression, but we find appellant's contention without merit. Essentially, appellant contends that when an assessment is abated because it is illegal, any statutory notice of deficiency sent prior to such abatement is thereby rendered invalid and void. Reliance is placed on Crompton-Richmond Co. v. United States, 311 F.Supp. 1184 (S.D.N.Y.1970). There, the district court, on a motion for summary judgment in a refund suit, decided that when an abatement of assessment issued in error, the assessment could be reinstated if the error resulting in abatement was the result of a mistake of fact or a bookkeeping error.
 
 
 10
 We find Crompton-Richmond wholly inapposite to the question posed in this case, which concerns the relationship of an illegal assessment and a valid abatement to a prior valid notice of deficiency. Crompton-Richmond, a refund suit, did not involve the validity of the notice of deficiency. The Department of Finance cites Noyes et al. v. United States, 55 F.2d 870 (9th Cir. 1932) which is more in point, though only marginally relevant. In Noyes, the Ninth Circuit considered the effect of a letter which gave the taxpayer notification of a deficiency "which has been assessed." In context, this was an ambiguous phrase which might have put the taxpayer in doubt as to whether the IRS letter was notice of a jeopardy assessment. However, as in our case, the letter also came with waiver forms in the event the taxpayer chose not to dispute the deficiency determination in the Tax Court. Moreover, a subsequent letter explained that there had been a prior erroneous assessment, and reminded the taxpayer of his right to appeal within 60 days. It was held that the letters, despite the prior invalid assessment, constituted an effective notice of deficiency. The distinctions are, first, that Noyes antedated the 1954 act; second, it concerns a notice of deficiency after an invalid assessment, in contrast with notice of the abatement of an invalid assessment following an otherwise valid notice of deficiency.
 
 
 11
 However, these distinctions are insufficient to completely undercut Noyes. We think that the proper rule is that minor imperfections in procedure which cause no substantial prejudice to taxpayers' rights are no defense against an otherwise valid notice of deficiency.[4] Appellant does not complain, nor could he, of inadequate notice. Moreover, we note that appellant's assertion of the invalidity of the deficiency notice is inconsistent with the procedure he elected to follow in contesting the Department of Finance's determination. Rather than pay the tax and sue for a refund, Hopper chose to petition for a redetermination of deficiency. In doing so, he implicitly conceded the validity of the notice of deficiency which he now challenges. We conclude that the notice sent by the Department of Finance, abating illegal assessments for taxable years 1967-1971, did not operate to nullify the statutory notices of deficiency for those years.
 
 
 12
 Hopper also challenges the holding below that all sums paid to Gertrude T. Gardner pursuant to Article III of the Thomas will were taxable income to her. His chief contention is that funds were also paid to Adelaide Thomas, John Thomas' wife, and that an allocation should be made between the two beneficiaries to the extent of the Thomas estate's distributable net income.[5] The district court rejected this argument, finding that the payments to Adelaide Thomas were irrelevant to Gertrude Gardner's tax liability, and that there was ample estate income to cover all payments to Gardner. We agree.
 
 
 13
 The record clearly reveals distributable net estate income, for each of the taxable years in question, which exceeded the payments to Gertrude Gardner. The only significant question is whether the payments to Adelaide Thomas, aggregating $35,000 in the years 1968-1970, require that appellant's tax deficiency for those years be recomputed in accordance with 26 U.S.C. § 662(a) (2). The allocation required by that section is to be performed only if distributable net income is exceeded by the sum of:
 
 
 14
 (A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and (B) all other amounts properly paid, credited or required to be distributed to all beneficiaries.
 
 
 15
 The John Thomas will did not provide for distributions of current income either to Adelaide Thomas or to Gertrude Gardner. Thus, § 662(a)(2)(A) is irrelevant. Article III, which mandated the payments to Gertrude Gardner, did not specify whether they were from principal or income. We need not decide the source, however, for these payments were clearly "required to be distributed." For tax purposes, such payments are presumed to be from current income. 26 U.S.C. § 662(a).
 
 
 16
 It is thus possible largely to avoid the necessity for tracing of income which exists generally under existing law. Instead of determining whether a particular distribution represents amounts of current or accumulated trust income, this revision, broadly speaking, provides that any distribution is considered a distribution of the trust or estate's current income to the extent of its taxable income for the year. This principle is similar to the determination of whether a dividend has been distributed, i. e., that every distribution made by a corporation is deemed to be out of earnings and profits to the extent thereof and from the most recently accumulated earnings and profits.
 
 
 17
 S.Rep.No. 1622, 83d Cong., 2d Sess. 349 (1954) (section-by-section analysis of 26 U.S.C. § 662), U.S.Code Cong. & Admin.News 1954, pp. 4621, 4990. See Mott v. United States, 462 F.2d 512, 515, 199 Ct.Cl. 127, (1972), which refers to the current income presumption of § 662(a)(1) as a "conclusive presumption."
 
 
 18
 The same presumption does not apply, however, to the payments made to Adelaide Thomas. Section 661, dealing with deductibility by the estate of payments to beneficiaries, and § 662, concerning inclusion of those payments in the beneficiary's income, both refer to amounts "properly paid" or "required to be paid." The district court found no authorization in the John Thomas will for the payments to Adelaide Thomas. The will provided for her as follows:
 
 
 19
 EIGHTH: If my wife, Adelaide R. Thomas, survives me and at the time of my death is entitled by law to a share of my estate, I direct my Executor to set aside a portion of my estate equal to such minimum share in Trust for the life of my wife which will comply with the provisions of Section 10 subdivision (4) of Title 15 of the Virgin Islands Code; this portion to be disposed of as follows: (a) I give, devise and bequeath therefrom to my wife the sum of $2,500.00 outright; (b) the balance of such portion, I give, devise and bequeath to Louis Hoffman of St. Thomas, Virgin Islands, and the Chase Manhattan Bank of St. Thomas, Virgin Islands, as Trustees, to hold, manage, invest and reinvest the same, to collect income therefrom, to pay the net income therefrom in semi-annual instalments, to my wife, during her life, and upon her death to turn the principal over to Louis Hoffman and United States Trust Company of New York as Trustees under a certain Indenture of Trust executed by me dated December 10, 1959, and their successors, for the uses and purposes set forth in said Indenture, and accept the receipt of said Trustees therefor.
 
 
 20
 Thus, the executor was authorized, upon final settlement of the estate, to pay $2,500 outright out of the statutory widow's share and to pay the remainder of that share into a trust, of which Adelaide Thomas was to be life tenant. She was not the residuary legatee.[6] The determination whether payments from an estate are "properly paid" when the will is silent is governed by state (territorial) law. Rev.Rul. 71-335. The trial judge ruled that
 
 
 21
 (s)uch payments as were, in fact, made (to Adelaide Thomas) must have been laid out on some authority other than the Will for I find no such direction in that instrument.
 
 
 22
 We have read the will, and we agree with the district court. We have seen no Virgin Islands law which indicates that unauthorized payments from an estate are "properly paid" to the recipient thereof. We therefore agree with the district court that the payments to Adelaide Thomas are irrelevant to the tax liability of Gertrude Gardner because they are not such payments as create the necessity for allocation of income under 26 U.S.C. § 662.
 
 
 23
 Appellant raises one final point, which we find meritorious. In the redetermination proceeding, Hopper sought an allocation of the Thomas estate's depreciation deduction so that the estate of Gardner could claim its aliquot share as a deduction from income. The district court held
 
 
 24
 I see no authority for such an allowance, nor do I perceive any basis on which there is entitlement to such depreciation. Consequently I disallow it.
 
 
 25
 This was error. 26 U.S.C. § 167(h) and 26 C.F.R. § 1.167(h)-1(c) plainly provide that
 
 
 26
 In the case of an estate, the allowable (depreciation) deduction shall be apportioned between the estate and the heirs, legatees, and devisees on the basis of the income of the estate which is allocable to each.
 
 
 27
 The case will be remanded to the District Court of the Virgin Islands for redetermination of the tax deficiency of the Gardner estate for taxable years 1967 through 1971, according to the principles of 26 U.S.C. § 167(h).[7]
 
 
 
 [1]
 In the Virgin Islands, the income tax laws of the United States are applied, but the revenue is paid into the Virgin Islands Treasury. 48 U.S.C. § 1397. Petitions for redetermination of deficiencies in Virgin Islands taxes are heard by the United States District Court for the district of the Virgin Islands. 33 V.I.C. § 943(a)
 
 
 [2]
 THIRD: From and after my death I direct that my Executor until the final adjudication of my estate and the payment of the residuary estate over to Trustees as hereinafter provided, pay monthly to my sister, Gertrude Thomas Gardner, if she shall survive me, and continue to live, the sum of Fifteen Hundred Dollars ($1,500.00) together with any funds necessary to pay carrying on any dwelling house or business occupied by the said Gertrude Thomas Gardner during that time
 
 
 [3]
 Appellant may well have been confused by these notices. "Adjustment" and "abatement" are terms of art in tax practice, and the Government used them somewhat artlessly. An "adjustment" corrects an erroneous determination of deficiency, while an "abatement" corrects an erroneous assessment. The February 20 notices, sent on "Notice of Adjustment" forms, might well have had a tendency to mislead appellant into thinking the Department of Finance had decided there was no deficiency. However, these forms each stated that the reason they were sent was "(t)o abate the assessment in accordance with Mr. Kirchner's memorandum dated February 15, 1974." Since the record reveals no notice to appellant of an assessment, and instead shows only that notices of deficiency were sent on November 16, 1973, this explanation may have been less than edifying to appellant. However, the subsequent letter, discussed above, appears to have clarified the situation, for appellant did file a timely petition for redetermination of deficiency
 
 
 [4]
 Cf. A. G. Mitchell v. Commissioner, 51 T.C. 641 (1969), rev'd on other grounds, 430 F.2d 1 (5th Cir.), rev'd on other grounds, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1970) (fact that invalid assessment existed at time of notice of deficiency does not invalidate deficiency determination); Troiano v. Commissioner, 23 T.C.M. 1418, 1419, CCH Dec. 26,956(M) (1964) ("The jurisdiction of this Court is to determine the correctness of the deficiency involved, not the propriety of respondent's administrative policy and procedures.")
 
 
 [5]
 See 26 U.S.C. § 662:
 (a) Inclusion. Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:
 (1) Amounts required to be distributed currently: The amount of income for the taxable year required to be distributed currently to such beneficiary, whether distributed or not. If the amount of income required to be distributed currently to all beneficiaries exceeds the distributable net income (computed without the deduction allowed by section 642(c), relating to deduction for charitable, etc., purposes) of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (as so computed) as the amount of income required to be distributed currently to such beneficiary bears to the amount required to be distributed currently to all beneficiaries. For purposes of this section, the phrase "the amount of income for the taxable year required to be distributed currently" includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year.
 (2) Other amounts distributed. All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of
 (A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and
 (B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries
 exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.
 
 
 [6]
 Article XI(b) authorized the executor to make a lump sum settlement of the widow's share, but the record contains no evidence that the payments received during 1968-70 were such a settlement. Certainly they were not a "lump sum." And the testimony of Hein Christensen, accountant to the Thomas estate, mentions a settlement meeting of all interested parties in 1971, subsequent to the payments in question
 
 
 [7]
 The Government dismissed its appeal from the judgment for the estate of John Livingston Thomas. Therefore, any relief for the estate of Gertrude Gardner will be computed without altering that final judgment