AIMEE D. BAGUR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8325-74.    Filed July 29, 1976.

*M. Hepburn Many,* for the petitioner.
*Joseph R. Goeke,* for the respondent.

---

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in, and additions to, the petitioner's Federal income tax:

| Year | Deficiency | Sec. 6651(a)[1] addition | Sec. 6653(a) addition | Sec. 6654 addition |
|------|-----------|---------|---------|---------|
| 1960 | $230.00 | $57.50 | $11.50 | --- |
| 1961 | 271.00 | 67.75 | 13.55 | --- |
| 1962 | 605.00 | 142.63 | 30.25 | $15.56 |
| 1963 | 1,034.30 | 255.41 | 51.72 | 28.45 |
| 1964 | 192.00 | 48.00 | 9.60 | --- |
| 1965 | 372.00 | 17.75 | 18.60 | --- |
| 1966 | 1,155.97 | 288.55 | 57.80 | 32.29 |

The Commissioner now concedes that for the years 1963 through 1966, the petitioner is not liable for the addition to tax under section 6651(a) for failure to file a timely return and the addition to tax under section 6653(a) due to negligence. The principal issue to be decided is whether the petitioner owned one-half of the income earned by her husband for the years 1960 through 1966 under the Louisiana community property laws. We must also determine whether the additions to tax not conceded by the Commissioner are applicable.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Aimee D. Bagur, had her legal residence in Merced, Calif., at the time of filing her petition herein. She filed no Federal income tax returns for the years 1960 through 1966.

During the years in issue, the petitioner was married to Pierre E. Bagur, Jr. She and her husband lived at the same address in Lousiana until September 29, 1962, when they separated; thereafter, they maintained separate domiciles in Louisiana. They were divorced in 1968. The petitioner did not obtain a legal separation from bed and board prior to her divorce.

Mr. Bagur operated a business whereby he acted as a commissions agent and also as a real estate broker during the years in issue. He kept practically no records in his business, and his business was constantly in debt. The parties have stipulated the amounts of income earned by Mr. Bagur. Mr. Bagur never

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

discussed his business affairs with the petitioner. For some years prior to 1960, the petitioner and Mr. Bagur filed joint Federal income tax returns signed by each of them. Mr. Bagur filed no returns for the years 1960 through 1966.

The petitioner suffered from various illnesses and was employed intermittently during the years in issue. The parties have stipulated the amounts earned by the petitioner. After separating from her husband, she estimated that she received about $10,000 from him for food, rent, and other necessities. As a result of the settlement of the community following her divorce from Mr. Bagur, the petitioner received a piece of real property, which Mr. Bagur estimated to be worth between $2,000 and $3,000.

The petitioner was aware in 1960 that individuals were required to file Federal income tax returns. She did not sign a joint return with her husband for the years 1960 through 1962 and did not ask him whether he had filed returns for such years.

In his notice of deficiency, the Commissioner determined that the income earned by Mr. Bagur was community property under the laws of Louisiana and that the petitioner was required to report one-half of such income. He also determined that the petitioner had wages which she failed to report in 1962, 1963, 1965, and 1966.[2] Finally, he determined that the failure-to-file penalty and negligence penalty were applicable for all the years in issue and that the penalty for underpayment of estimated tax for 1962, 1963, and 1966 was applicable. He has since conceded that the failure-to-file and negligence penalties are not applicable for the years 1963 through 1966.

## OPINION

Section 1 imposes a tax on the taxable income "of" every individual who is a citizen or resident of the United States. Sec. 1.1-1(a), Income Tax Regs. "The use of the word 'of' denotes ownership." *Poe v. Seaborn,* 282 U.S. 101, 109 (1930). Since State law determines the ownership of income, we must look to the laws of Louisiana to determine whether the petitioner "owned" a share of the community income earned by her former husband. *United States v. Mitchell,* 403 U.S. 190, 195 (1971);

---

[2] Under Louisiana law, a wife's earnings, while she is living separate and apart from her husband, are her separate property. La. Civ. Code Ann. art. 2334 (West 1971). Thus, all of such earnings must be reported by her.

see *Poe v. Seaborn, supra* at 111. If the petitioner had a vested interest in the community income, she must report and pay a tax on one-half of such income. See *United States v. Malcolm*, 282 U.S. 792 (1931); *Hopkins v. Bacon*, 282 U.S. 122 (1930); *Goodell v. Koch*, 282 U.S. 118 (1930); *Poe v. Seaborn, supra.* However, if the petitioner's interest in the community property was a mere expectancy, she was not required to report one-half of the community income. *United States v. Robbins*, 269 U.S. 315 (1926).

In *Bender v. Pfaff*, 282 U.S. 127, 131 (1930), the Supreme Court found that under Louisiana law, a wife had an interest in the income of the community that "is not a mere expectancy during the marriage." Thus, the Court held that each spouse owned one-half of the community income. In *United States v. Mitchell, supra,* it was argued that since, on the dissolution of the community, a wife could renounce her share of the community property, she should not be treated as the owner of a share of the income during the existence of the community. However, the Supreme Court rejected such argument and held that her interests in the income during the existence of the community were such as to constitute ownership of one-half of the income.

The petitioner argues that these Supreme Court decisions are no longer applicable because of a recent decision by the Supreme Court of Louisiana concerning the nature of the wife's interest in community income. In *Pfaff* and *Mitchell,* the United States Supreme Court relied, in part, on *Phillips v. Phillips,* 160 La. 813, 107 So. 584 (1926), in determining the rights of the wife under Louisiana law. The *Phillips* case has recently been overruled in part by *Creech v. Capitol Mack, Inc.,* 287 So. 2d 497 (La. 1973). The issue to be decided is whether this change in Louisiana law affects the nature of the wife's interest in the community income for Federal income tax purposes.

In *Phillips v. Phillips, supra,* the issue for decision was whether a wife failed to acquire one-half of the community estate when she did not formally accept such interest on the dissolution of the marriage. In deciding that she need not accept formally her interest, the court stated that:

The wife's half interest in the community property is not a mere expectancy during the marriage; it is not transmitted to her by or in consequence of a dissolution of the community. The title for half of the community property is

vested in the wife the moment it is acquired by the community * * * [*Phillips v. Phillips,* 107 So. at 588.]

The court also pointed out in dictum that its prior opinion in *Guice v. Lawrence,* 2 La. Ann. 226 (1847), was erroneous. In that case, the court said that the wife's interest was "a mere expectancy" and held that the community assets could be used to satisfy the antenuptial debts of the husband since the wife acquired no title in the community assets until the dissolution of the community.

Since the decision in *Phillips,* the courts of Louisiana have consistently held that the wife acquires a vested interest in the community assets from the time they are acquired by the community. See *Gebbia v. City of New Orleans,* 249 La. 409, 187 So. 2d 423, 425 (1966); *Azar v. Azar,* 239 La. 941, 120 So. 2d 485, 487 (1960); *Thigpen v. Thigpen,* 231 La. 206, 91 So. 2d 12, 19 (1956); *Succession of Helis,* 226 La. 133, 75 So. 2d 221, 222 (1954); *Succession of Wiener,* 203 La. 649, 14 So. 2d 475, 477 (1943); *Smith v. Succession of Smith,* 298 So. 2d 146, 148 (La. Ct. App. 1974). In *Messersmith v. Messersmith,* 229 La. 495, 86 So. 2d 169, 173 (1956), the court stated:

There is nothing more fundamental in our law than the rule of property which declares that this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired. * * *

In *Creech v. Capitol Mack, Inc., supra,* the issue to be decided was whether an antenuptial debt of the husband could be collected from the community property. The court discussed its prior opinion in *Guice v. Lawrence, supra,* and pointed out that although the discussion of the wife's interest in the community property in *Guice* was contrary to other cases, the holding in that case was consistent with other early cases. In discussing the nature of the wife's interest in the community property, the court said that "it is very plain that the wife has a greater interest than *the mere possibility of an expectant heir." Creech v. Capitol Mack, Inc.,* 287 So. 2d at 508; emphasis in original. It stated that the wife owns an interest in the community assets, but that such ownership is "imperfect" during the community since the husband has the use and enjoyment of the entire community assets with the power of alienation until the dissolution of the community. Consequently, the court held that during the community, the entire assets of the community were subject to

the claims of the husband's creditors. In view of that conclusion, the court declared that the dictum in *Phillips* overruling the *holding* in *Guice* would no longer be followed.

In our judgment, the change in Louisiana law made by *Creech* does not undermine the rationale of the Supreme Court's opinion in *Bender v. Pfaff,* 282 U.S. 127 (1930), and *United States v. Mitchell,* 403 U.S. 190 (1971). The fact that the wife's interest in the community property during the community is not "perfect" ownership was recognized by the Court in *Mitchell.* Since the husband has control of the administration of the community assets during the community and may alienate them without the consent of his wife, it is obvious that the wife's interest is less than complete. While *Creech* held that the wife's interest in the community property may be used to satisfy the debts of the husband, such conclusion was based on her husband's powers of administration and alienation over the community assets. Such conclusion does not change the ownership of the community income. See *Commissioner v. Cavanagh,* 125 F.2d 366, 368-369 (9th Cir. 1942), affg. 42 B.T.A. 1037 (1940). Upon the dissolution of the community, the husband must make a full accounting to his wife. *Creech v. Capitol Mack, Inc.,* 287 So. 2d at 510. The courts of Louisiana have consistently held that it is a fundamental rule of property law that the wife owns an interest in the community property equal to that of her husband and that interest vests at the time the property is acquired by the community. See, e.g., *Messersmith v. Messersmith, supra.* There is no indication in *Creech* that this fundamental rule of property law was changed. Thus, we think that *Creech* does not materially change the wife's vested interest in the community property.

The rule for reporting community income in Louisiana has been well settled since 1930. During this time, the citizens of Louisiana have relied upon this rule and planned their affairs accordingly, and any change in the rule would have a wide impact on the income tax, estate tax, and gift tax consequences of many transactions. To hold that the decision in *Creech* changes by implication such a longstanding rule is clearly unwarranted. Absent a clear indication from the courts of Louisiana that their laws of community property have been changed significantly, we must continue to follow the decisions of the Supreme Court in *Pfaff* and *Mitchell.*

The petitioner argued fervently that she should not be taxed on one-half of her husband's income because she had no control over, nor knowledge of, his affairs. Such argument was considered and rejected in *Mitchell,* where it was held that since the wife's interest is completely vested and equal to her husband's interest upon dissolution of the community, each spouse must report one-half of the community income.

The petitioner also seeks to distinguish the Supreme Court's holding in *United States v. Mitchell, supra,* on the ground that she was not domiciled with her husband during some of the years in issue, although she does not argue that her separate domicile dissolved the community during such years. See La. Civ. Code Ann. arts. 2402, 136, 155, 140 (West 1971). However, it is well settled that the wife's obligation to report one-half of the community income continues even though the spouses live apart. *Charloette J. Kimes,* 55 T.C. 774 (1971); *Christine K. Hill,* 32 T.C. 254 (1959); *Paul Cavanagh,* 42 B.T.A. 1037 (1940); see *Gilmore v. United States,* 290 F.2d 942 (Ct. Cl. 1961), revd. on another issue 372 U.S. 39 (1963). Even if the wife moves to a noncommunity property State, she must report one-half of the income of her husband if his income remains community property under the laws of the State where he resides. *Marjorie Hunt,* 22 T.C. 228 (1954). Consequently, the fact that the petitioner was separated from her husband for some of the years in issue does not alter the fact that she had a vested interest in his income under Louisiana law and must report such income for Federal tax purposes.

The next issue to be decided is whether the failure to file penalty should be imposed for the years 1960 through 1962. Section 6651(a) provides for an addition to tax for failure to file a return timely, but the addition is not applicable if "it is shown that such failure is due to reasonable cause and not due to willful neglect." The taxpayer has the burden of proving such failure was due to reasonable cause. *Electric & Neon, Inc.,* 56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); *Rudolf A. Zivnuska,* 33 T.C. 226, 239 (1959).

The petitioner testified that she knew that individuals were required to file Federal income tax returns and that she had signed joint returns with her husband for the years prior to 1960. Although she testified that she "assumed" her husband filed a joint return for her during the years in issue, she never asked him

if he had done so and she never signed returns for those years. Similar facts were involved in the *Mitchell* case and the Court observed: "It was certainly not reasonable simply to assume that her husband had signed her name to the returns, especially when she did not even attempt to verify the existence of said returns." *Anne Goyne Mitchell,* 51 T.C. 641, 647 (1969), revd. 430 F.2d 1 (5th Cir. 1970), revd. 403 U.S. 190 (1971); see *Leo Sanders,* 21 T.C. 1012, 1020 (1954), affd. 225 F.2d 629 (10th Cir. 1955), cert. denied 350 U.S. 967 (1956). On this record, we must conclude that the petitioner has not established that her failure to file a timely return was due to reasonable cause.

The Commissioner also determined that the negligence penalty was applicable for the years 1960 through 1962. The petitioner must establish that no part of the underpayment for such years was due to negligence. *Terry C. Rosano,* 46 T.C. 681, 688 (1966). For the same reasons that we found that her failure to file a return was not due to reasonable cause, we find that the underpayment of tax for such years was due to negligence. The petitioner was aware of her duty to file a return and pay the required tax, but did not exercise due care in performing that duty. See *Anne Goyne Mitchell, supra* at 648; *Robinson's Dairy, Inc.,* 35 T.C. 601, 608-609 (1961), affd. 302 F.2d 42 (10th Cir. 1962). Thus, the petitioner is also liable for the section 6653(a) penalty.

Finally, the Commissioner determined that the petitioner was liable for an addition to tax pursuant to section 6654 for the years 1962, 1963, and 1966 due to an underpayment of estimated tax. The imposition of the penalty is mandatory, and extenuating circumstances are not a basis for relief. *Anne Goyne Mitchell, supra;* see *Estate of Barney Ruben,* 33 T.C. 1071, 1072 (1960). Since the petitioner has failed to establish that she was not liable for such tax, we must conclude that she is liable for the penalty for the underpayment of such tax. Sec. 6654(a); see *John P. Reaver,* 42 T.C. 72, 83 (1964). To reflect the concessions made by the Commissioner,

*Decision will be entered under Rule 155.*