NANCY B. LaBELLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
La Belle v. Commissioner
Docket No. 9773-79.
United States Tax Court
T.C. Memo 1984-69; 1984 Tax Ct. Memo LEXIS 602; 47 T.C.M. (CCH) 1078; T.C.M. (RIA) 84069; February 13, 1984. Theodore J. England, for the petitioner. Elaine T. Moriwaki, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $290,564.37 and additions to tax of $71,991.59 under section 6651(a)[1] and $14,528.22 under section 6653(a) for the taxable year 1973. The issues are (1) whether petitioner intended to file a joint return for 1973, and (2) if the return is considered a joint return whether petitioner qualifies as an innocent spouse under section 6013(e); (3) whether petitioner is liable for an addition to tax under section 6651(a) for failing to file a timely return; and (4) whether petitioner is liable for an addition to tax under section 6653(a) for negligent underpayment of taxes. *604 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Santa Paula, California, at the time of filing the petition in the instant case. During 1973, petitioner was employed by the Santa Paula School District to teach children with emotional learning handicaps, and has been employed in that capacity continuously from 1961 to November 1980. Petitioner married Donald A. LaBelle (Donald) in January 1957. In 1965 or 1966, Donald purchased a used car lot in Santa Paula, California, and did business under the name Don LaBelle's Wholesale Center. Sometime between 1965 and 1971, Donald expanded the business and opened two other used car lots. In 1971, he purchased a new automobile dealership and began doing business under the name Steve Love's Chrysler-Plymouth. Although petitioner did the bookkeeping and taxes for the three used car lots, she did not participate in the new dealership. In early 1973, petitioner separated from Donald and on August 9, 1973, an interlocutory judgment of dissolution of marriage was filed to dissolve their marriage. *605 A marital settlement agreement signed by Donald and petitioner and dated June 25, 1973, was incorporated in the interlocutory judgment. The marital agreement provided that the parties would file joint tax returns for taxable years prior to the year in which a final judgment of dissolution was obtained and that the parties would sign and deliver such other documents as may be necessary or desirable to accomplish the agreements provided therein. The agreement further provided that (a) Donald would file the petition for dissolution of marriage; (b) the settlement to petitioner would be $7,000--paid in installments; the furniture and fixtures from the family residence; a $10,000 insurance policy and use of a car; and (c) Donald would retain the family residence and pay all community debts known to him at the time of the execution of said agreement. The final judgment of dissolution of marriage was filed on January 9, 1974. In March 1974, petitioner supplied Donald with her W-2 (Wage and Tax Statement) form from the Santa Paula School District showing a salary of $12,797, Federal taxes withheld of $1,998, and a list of deductions for 1973 so that he could file a return for 1973. *606 In June 1974, petitioner and Donald executed a power of attorney (Department of the Treasury, Internal Revenue Service Form 2848) appointing Peter J. Celeste, Esq. as her attorney-in-fact with respect to all Internal Revenue tax matters for the 1971, 1972 and 1973 tax years. At the time petitioner signed the power of attorney, she thought that the 1973 tax return had been filed. Petitioner did not separately file a tax return for 1973. A Federal income tax return, Form 1040, was filed for 1973 with the Ventura, California, office of the Internal Revenue Service on June 5, 1975. The return was signed by Donald and petitioner's signature was entered by Mr. Celeste pursuant to the 1974 power of attorney. The return did not contain a signature in the preparer's signature line. In August 1980, petitioner first became aware that the return had been filed late and without her signature. Until then, petitioner never inquired of Donald or the Internal Revenue Service as to whether such return had been filed. The 1973 tax return reflected Schedule C expenses for Donald's automobile business (Steve Love's Chrysler-Plymouth) and included the following: (a) Cost of goods sold and/or operations
$2,071,997
(b) Salaries and wage expenses
37,533
(c) Advertising expenses
20,961
(d) Demonstration expenses
8,743
(e) Travel and entertainment expenses
7,336
*607 In his statutory notice of deficiency, the Commissioner made the following adjustments: (a) Decreased the cost of goods sold (used cars) by
$447,137.71
(b) Decreased salary and wage expense by
4,800.00
(c) Decreased advertising expenses by
4,700.00
(d) Decreased demonstrator expense by
1,390.00
(e) Decreased travel and entertainment expenses by
4,768.00
(f) Allowed the standard deductions and exemptions
not previously claimed on the return.
OPINION The central issue for decision is whether petitioner and Donald filed a joint return for the 1973 tax year. It is well settled that a determination of whether income tax returns are joint or separate returns of a husband and wife is a question of fact to be determined by all the evidence. Heim v. Commissioner,27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958). The ultimate determination is the intent of the parties. O'Connor v. Commissioner,412 F.2d 304 (2d Cir. 1969), affg. in part, revg. in part, and remanding with directions a Memorandum Opinion of this *608 Court; Hennen v. Commissioner,35 T.C. 747, 748 (1961). We think it is clear that petitioner intended to file a joint return for the 1973 taxable year. The marital settlement agreement signed by petitioner and Donald on June 25, 1973 provided that the tax returns for taxable years prior to the year in which a final judgment for dissolution was obtained would be filed as joint returns. The final judgment of dissolution of their marriage was filed on January 9, 1974. As her testimony indicates, petitioner then contemplated that Donald would file the return jointly. She therefore provided Donald with her W-2 form and all deductions which he needed to fill out the return and assumed that the return would be timely filed. In June 1974, upon Donald's request, petitioner signed a power of attorney which appointed Peter Celeste as her attorney-in-fact with respect to all Internal Revenue tax matters for the 1971, 1972, and 1973 tax years.Approximately 1 year later, a 1973 tax return containing Donald's signature and petitioner's signature which was entered by Mr. Celeste was filed with the Internal Revenue Service. Petitioner conceded in her testimony that her signature *609 on the power of attorney was genuine. She argues, however, that she signed the power of attorney upon Donald's representation that their prior years' tax returns were being audited and that they would probably get a refund. She claims that she was never advised that her execution of the power of attorney would entitle the attorney to sign the 1973 tax return on her behalf. Petitioner thus contends that her signature is not valid since it was procured by trickery. Dolan v. Commissioner,44 T.C. 420 (1965). We are of the opinion that petitioner has failed to prove that her signature on the power of attorney was procured by trickery. She was an educated woman familiar with financial matters and should have been aware of its true nature. [2]
*610 It is clear that petitioner intended to file a joint return and that she signed through an attorney does not alter this intent. Indeed, if an intent to file a joint return otherwise exists, it is not fatal that one spouse did not sign the return. Hennen v. Commissioner,supra.Where a husband filed a joint return without objection of the wife, who failed to file a separate return, it may be presumed that the joint return was filed with the consent of the wife. Howell v. Commissioner,10 T.C. 859 (1948), affd. 175 F.2d 240 (6th Cir. 1949). Here, the facts clearly establish that petitioner intended that Donald should file the joint return, and that is the only return filed by or on her behalf for that year.By petitioner's own admission, when Donald asked to sign the power of attorney, she thought that Donald had already filed a joint return for the 1973 tax year. There is thus no question that she then intended that the return be filed jointly. From that time until approximately 1 year later when the return was actually filed, there *611 is no indication that petitioner altered her intention that a joint return be filed. And of course, the marital settlement agreement she signed provided for filing a joint return for 1973. Petitioner's testimony that she would not have signed a tax return which obligated her to pay $290,000 in taxes underscores the retrospective nature of petitioner's claim. We thus conclude that the return filed for the 1973 tax year was intended to be the joint return of petitioner and Donald. Our conclusion that the return filed for 1973 was a joint return necessitates consideration of petitioner's contention that she was an innocent spouse entitled to protection from liability for the deficiency determined in 1973 by virtue of section 6013(e). Section 6013(e)(1) requires that three conditions be satisfied to relieve a spouse from joint liability: (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount *612 of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, * * *. Section 6013(e)(2)(B) directs us to section 6501(e)(1)(A) in determining whether there has been an omission from gross income for purposes of section 6013(e)(1)(A). Section 6501(e)(1)(A)(i) contains a special definition of gross income which effectively requires us to disregard omissions from gross income resulting from the overstatement of cost of goods sold. That paragraph provides: (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the *613 return) prior to diminution by the cost of such sales or services, * * *. Thus, the overstatement of cost of goods sold giving rise to the deficiency herein is not an omission from gross income for purposes of applying section 6013(e)(1)(A). Resnick v. Commissioner,63 T.C. 524 (1975). The remaining deficiency adjustments involve overstated business deductions (conceded by the petitioner), and would also not constitute an "omission" from income since section 6013(e) does not apply to a tax deficiency resulting from erroneous deductions. Section 1.6013-5(d), Income Tax Regs.; Estate of Klein v. Commissioner,63 T.C. 585, 595 (1975), affd. 537 F.2d 701 (2d Cir. 1976); see Allen v. Commissioner,514 F.2d 908, 915 (5th Cir. 1975), affg. in part, revg. in part, and remanding 61 T.C. 125 (1973). We reluctantly conclude that petitioner is not an innocent spouse entitled to relief pursuant to section 6013(e). Petitioner nevertheless insists that she was the victim of her husband's fraud and that this Court should apply general principles of equity and fairness to relieve *614 her from joint liability. [3] We must decline petitioner's request. This case is typical of many that arise involving innocent spouses, and while the result is extremely unfortunate, we are not at liberty to rewrite the statute on an adhoc basis. *615 That the technical rules of section 6501 must determine whether there is an "omission" from gross income is unfortunate since the main thrust of section 6013(e) is concerned with relief for an "innocent spouse." The legislative history of section 6013 makes it plain that the statute was designed to bring government tax collection practices into accord with basic principles of equity and fairness. See United States v. Dioguardi,350 F. Supp. 1177, 1179 (E.D. N.Y. 1972); S. Rept. No. 91-1537 (1970), 1971-1 C.B. 606. In situations such as that confronting Mrs. LaBelle, the purpose of the statute is frustrated by special rules not pertinent to the determination of whether it is fair to impose liability on a spouse who was not involved in, nor benefitted from, any wrongdoing. Estate of Klein v. Commissioner,537 F.2d 701 (2d Cir. 1976), affg. 63 T.C. 585 (1975). But, as the Supreme Court recognized United States v. Mitchell,403 U.S. 190, 206 (1971), "[t]he remedy is in legislation." Without statutory protection, the Supreme Court in Mitchell declined to grant relief to spouses victimized by their *616 husbands and the operation of community property laws although it recognized that "these cases are 'hard' cases and exceedingly unfortunate." 403 U.S. at 205. [4] We are likewise compelled to await a Congressional response to the situation. [5] We thus hold that petitioner is jointly and severally liable for the deficiency in income tax for the year 1973. [6]
*617 The next issue is whether petitioner is liable for the additions to tax under section 6651(a)(1) and section 6653(a) for the taxable year 1973. Section 6651(a)(1) provides for an addition to tax for failure to file a return timely, but the addition is not applicable if "it is shown that such failure is due to reasonable cause and not due to willful neglect." The taxpayer has the burden of proving such failure was due to reasonable cause. Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1342 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Petitioner contends that she should be excused from the addition since she timely provided Donald with her W-2 form and information relating to her deductions. However, she testified that she never inquired of Donald or the Internal Revenue Service as to whether a return had been filed. Petitioner also testified that she was unsure all along whether she had signed the return, but was assured by Donald that she had. Such reliance on her ex-spouse does not constitute reasonable cause. Bagur v. Commissioner,66 T.C. 817 (1976), *618 remanded on a different issue 603 F.2d 491 (5th Cir. 1979); Mitchell v. Commissioner,51 T.C. 641 (1969), revd. on other grounds 430 F.2d 1 (5th Cir. 1970), revd. on other grounds 403 U.S. 190 (1971). If petitioner was in doubt as to whether she signed the return, she should certainly have made further inquiries as to whether it had been filed. On this record, we must conclude that petitioner has not established that her failure to file a timely return was due to reasonable cause. As to the addition to tax under section 6653(a), petitioner must establish that no part of the underpayment for 1973 was due to negligence or intentional disregard of rules and regulations. Bagur v. Commissioner,supra at 824; Rosano v. Commissioner,46 T.C. 681, 688 (1966). For the same reasons that we found that her failure to file a return was not due to reasonable cause, we find that the underpayment of tax for such years was due to negligence. Petitioner made no effort to inquire as to the correctness of any *619 return filed. Petitioner may have had little involvement with Donald's business activities or with the preparation of their joint tax return for 1973. Nonetheless, when a joint return is made, the liability with respect to the tax is joint and several. Section 6013(d)(3); Hedrick v. Commissioner,63 T.C. 395, 403-404 (1974). The reference to "tax" includes additions to tax. Section 6662(a)(2). When Congress has intended to relieve an innocent spouse from joint liability regarding jointly reported income, it has done so specifically. See, e.g., section 6653(b)(4) (spouse not liable for fraud addition assessed on joint return unless some part of the underpayment is due to the fraud of such spouse). We have previously determined that a joint return has been filed and that the innocent spouse rules of section 6013 are inapplicable herein. Thus, since petitioner has presented no evidence to show that the negligence addition for the 1973 tax year is unjustified, the imposition of the addition is sustained. [7]
*620 Decision will be entered for the respondent.
Footnotes
1. All sections references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated.↩
2. On brief, petitioner has cited cases dealing with the defense of duress. E.g., Furnish v. Commissioner,262 F.2d 727 (9th Cir. 1958); Brown v. Commissioner,51 T.C. 116 (1968). However, any claim that her signature was executed under duress is meritless. To establish that her signature was executed under duress, petitioner must prove both (1) that she was unable to resist demands to sign the power of attorney, and (2) that she would not have signed it except for constraint applied to her will. Brown v. Commissioner,supra.↩There is nothing in the record to indicate that petitioner signed the power of attorney in fear of her husband or under any type of pressure which deprived her of contractual volition.Thus, we find that petitioner was able to exercise her free will when she signed the power of attorney.
3. Petitioner relies on three opinions of the Sixth Circuit Court of Appeals which indicated that a victimized spouse may be relieved of liability as a result of fraudulent conduct practiced upon her by the other spouse. Sharwell v. Commissioner,419 F.2d 1057 (6th Cir. 1969), vacating and remanding a Memorandum Opinion of this Court; Huelsman v. Commissioner,416 F.2d 477 (6th Cir. 1969), remanding a Memorandum Opinion of this Court; Scudder v. Commissioner,405 F.2d 222, 226 (6th Cir. 1968), remanding 48 T.C. 36 (1967), rehearing denied, 410 F.2d 686 (6th Cir. 1969). However, the circumstances of those cases were dramatically different from these before us, and even more to the point, these cases arose prior to the enactment of sec. 6013(e). In fact, the Tax Court decision in Scudder was explicitly referred to by the House Ways and Means Committee (H. Rept. No. 91-1734, to accompany H.R. 19774 (Pub. L. 91-679 (1971), p. 2), as well as by the Senate Finance Committee (S. Rept. No. 91-1537 (1970), 1971-1 C.B. 606↩, 607).
4. See sec. 66 which was enacted after the decision in United States v. Mitchell,403 U.S. 190↩ (1971). 5. A bill is currently pending before Congress which may provide the needed relief (H.R. 3475, Tax Law Simplification and Improvement Act of 1983). The Joint Committee on Taxation explained the bill as follows: Joint return liability of innocent spouse Under the bill, the innocent spouse rule (sec. 6013(e)) would apply to cases in which the tax liability results from a substantial understatement of tax that is attributable to grossly erroneous items (including claims for deductions or credits, as well as omitted income) of one spouse. Grossly erroneous items would include any item of income that is omitted from gross income, regardless of the basis for omission. A claim for deduction or credit would be treated as a grossly erroneous item only if the claim had no basis in law or fact. The bill would define a substantial understatement as any understatement that exceeds 10 percent of the tax required to be shown on the return or $500, whichever is less.As under present law, relief may be granted only where it would be inequitable to hold the innocent spouse liable. In applying these rules, community property laws would continue to be disregarded in determining to whom an item is attributable. The bill would not specifically require that the determination of whether it would be inequitable to hold the innocent spouse liable include consideration of whether such spouse benefitted from the erroneous item. The omission from income determination may apply notwithstanding that adequate information about the erroneous items was provided on the return. [Staff of Joint Comm. on Taxation, Tax Law Simplification and Improvement Act of 1983 (Comm. Print July 22, 1983).] ↩
6. We therefore need not address respondent's alternate theory that petitioner in any event must report one-half of the income under the community property laws of California.↩
7. The parties stipulated to the correct amount of adjustments originally in issue, asking the Court to decide whether a joint return was filed and whether the innocent spouse provisions of sec. 6013(e)↩ are applicable. As noted earlier, in view of our decision on these issues, we do not pass on respondent's alternative contention that in any event petitioner would be liable for a substantial portion of the deficiency due to her rights as a spouse in a community property state.