JAVID MARGHZAR, a/k/a DAVID MARGHZAR, a/k/a MOHAMMAD BAGHAR MONIRI, a/k/a NEHRAN MESBAHZADEH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marghzar v. Commissioner
Docket No. 46093-85
United States Tax Court
T.C. Memo 1989-609; 1989 Tax Ct. Memo LEXIS 609; 58 T.C.M. (CCH) 663; T.C.M. (RIA) 89609; November 8, 1989; As corrected November 9, 1989 Javid Marghzar, pro se. Glorianne Gooding, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a deficiency notice dated October 4, 1985, respondent determined that petitioner received from the sale of automobiles taxable income in 1983 and 1984 on which he was liable for deficiencies in Federal income tax and additions to tax in the following amounts: Additions to Tax under Sections [1]
Year
Deficiency
6653(b)(1)
6653(b)(2)
6654
6661(a)
1983
$ 17,196.00
$  8,598.00
*
$ 1,055.00
$ 1,720.00
1984
60,142.00
30,071.00 **
3,782.00
6,014.00
*611 In the deficiency notice respondent, in the alternative to the additions to tax for fraud under section 6653(b)(1) and (2), determined that petitioner was liable for additions to tax for negligence under section 6653(a)(1) and (2) and for additions to tax for having failed to file timely returns under section 6651(a)(1). In an amended answer respondent abandoned his determination that petitioner had income in 1983 and 1984 from the sale of automobiles and determined that petitioner received unreported taxable income as reflected by deposits made to various bank accounts during 1983 and 1984 of $ 186,740 and $ 150,016, respectively, on which petitioner is liable for deficiencies in tax and additions to tax in the following increased amounts: Additions to Tax Under Sections
Year
Deficiency
6654(a)
6653(b)(1)
6653(b)(2)
6661
1983
$ 82,893.00
$ 5,068.00
$ 41,447.00
*
$ 20,723.00
1984
62,943.00
3,958.00
31,472.00 **
15,736.00
*612 In the amended answer respondent also determined increases to the additions to tax for negligence and for having failed to file timely returns in the alternative to the additions to tax for fraud. The issues for decision are whether, as determined by respondent in his amended answer, (1) petitioner had unreported taxable income in 1983 and 1984 in the respective amounts of $ 186,740 and $ 150,016; (2) petitioner is liable for additions to tax under section 6653(b)(1) and (2), section 6654, and section 6661(a); and (3) in the alternative to the additions to tax for fraud, petitioner is liable for additions to tax for negligence and for having failed to file timely returns. Since the issues are largely factual, we have combined our Findings of Fact and Opinion. A great many facts have been stipulated and are so found, the stipulations and related exhibits being incorporated herein by reference. During 1983 and 1984 and at the time he filed his petition herein, petitioner resided at 5811 Donna Avenue, Tarzana, California. Petitioner was born in Iran in 1960. He came to the United States *613 in 1979 after completing one year of college in Iran. He completed two more years of college in this country. He filed income tax returns for 1981 and 1982 on which he received refunds of about $ 1,800. He did not file income tax returns for 1983 and 1984. The development of the factual background of this case began in the early part of 1985. At that time Sergeant William A. Lovold of the Burglary Automobile Theft Division of the Los Angeles Police Department was in charge of a special investigation into the theft of automobiles in the San Fernando Valley and the alteration or switching of their vehicle identification numbers. As part of this investigation Sergeant Lovold came across a stolen 1984 Porsche on which the vehicle identification number (hereinafter VIN) had been altered or switched. In an attempt to locate the owner of the stolen vehicle, Sergeant Lovold learned that it had been purchased from an insurance salvage pool by a group doing business as Universal Enterprises. Upon examining the records of the insurance salvage pool with respect to the Porsche, Sergeant Lovold noted that the names of Mehrdad Tehrani, Ali Sabbagh, and Javid Marghzar were associated with *614 the car and Universal Enterprises. Before Sergeant Lovold could determine the owner of the vehicle he learned from a detective in another division of the police department that a certain David Wells (Wells) had been arrested for stealing cars in the San Fernando Valley on the specific order of a group of Iranians. Upon interviewing Wells, Sergeant Lovold learned that on occasion Wells would be contacted on the telephone by a member of the Iranian group who would convey to Wells in code the description of a desired car. Wells would then locate such a car, steal the same, and call the group back in order to arrange the delivery of the stolen vehicle. Thereafter, at the instigation of Sergeant Lovold, a request was made through the Iranian group for a 1985 Toyota Supra. At a subsequent delivery by Wells of a stolen 1985 Toyota Supra the individuals accepting its delivery, Mehrdad Tehrani and his brother, Ebrahim Tehrani, were arrested by Sergeant Lovold. Upon learning that the Tehranies lived at 5815 Donna Avenue, in Tarzana, Sergeant Lovold and his men proceeded to that address and with a search warrant searched the same. During the search of 5815 Donna Avenue, the officers *615 discovered a number of cars including a gold 944 Porsche from which the VIN had been removed. They also discovered numerous car parts and automotive tools. During the search of the premises located at 5815 Donna Avenue, Sergeant Lovold and his men were able to observe a number of cars and car parts on the adjoining property, 5811 Donna Avenue. They also observed that the two properties were not separated by a fence or wall but only by a few cypress trees. Upon making these observations and learning that the adjoining property was occupied by Javid Marghzar, and upon recalling that Javid Marghzar was one of the names he had come across in connection with Universal Enterprises, Sergeant Lovold went to 5811 Donna Avenue and with the permission of petitioner's sister, who was the only person present, proceeded to search its premises. During this search, petitioner arrived at 5811 Donna Avenue, and at Sergeant Lovold's request, executed a written consent to the search. At this time petitioner informed the officers that he had just returned from a nearby police station where he had reported the theft of his gold 944 Porsche. When advised by the officers that a gold 944 Porsche without *616 a VIN was parked on the adjoining property, petitioner denied it was his even though it contained some of his checks and other personal papers. The officers subsequently established that the Porsche was titled to petitioner although at trial petitioner insisted that he had previously given the car to his sister who, with petitioner's assistance, had sold it to Patricia Ortiz. As a result of Sergeant Lovold's investigation, the District Attorney for Los Angeles County filed on September 6, 1985, in the Superior Court of Los Angeles County an information against petitioner which charged that: [Count One] The said David Marghzar is accused by the District Attorney of and for the County of Los Angeles, State of California, by this information, of the crime of Presenting Fraudulent Claim, in violation of Section 556(a)(1), California Insurance Code, a felony, committed as follows: That the said David Marghzar, on or about the 6th day of June, 1985, at and in the County of Los Angeles, State of California, did willfully, unlawfully, and knowingly present and cause to be presented to Progressive Insurance Company, a corporation, a false and fraudulent claim for the payment of *617 Twenty Thousand Five Hundred and No/100 Dollars ($ 20,500.) loss, under a contract of insurance against loss issued by Progressive Insurance Company, a corporation. * * * [Count Two] For a further and separate cause of action * * * the said David Marghzar is accused by the District Attorney of and for the County of Los Angeles, State of California, by this information, of the crime of Grand Theft, in violation of Section 487(1), Penal Code of California, a felony, committed as follows: That the said David Marghzar, on or about the 8th day of August, 1985, at and in the County of Los Angeles, State of California, did willfully and unlawfully take money and personal property of a value exceeding Four Hundred Dollars ($ 400.00), to wit, Twenty Thousand Five Hundred and No/100 Dollars ($ 20,500.), the property of Progressive Insurance Company. On March 6, 1986, after a trial by jury, petitioner was convicted on both counts in the information and was sentenced to three years in the state prison on Count One, and two years in the state prison on Count Two, with the sentence on Count Two being stayed pending a successful completion by petitioner of the sentence in Count One. *618 In May of 1986 the District Attorney for Los Angeles County also filed a Felony Complaint for Arrest Warrant in the Municipal Court of Los Angeles County in which petitioner and/or Mehrdad Tehrani, Ebrahim Tehrani, Ali Sabbagh, Farid Fani, Mascud Nejadbakh, Mehdi Nejadbakh, and Jahangir Zohdi were charged with a total of 33 felonies. Specifically, petitioner was charged with eight felonies as follows: (1) Grand Theft in violation of California Penal Code section 487(1) in that on or about May 1, 1985, petitioner with Mehrdad Tehrani did willfully take money and personal property of a value exceeding $ 400 being the property of Patricia Ortiz (Count 15); (2) Grand Theft in violation of Penal Code section 487(1) in that on or about January 28, 1985, petitioner did willfully and unlawfully take money and personal property of a value exceeding $ 400 being the property of Nasser Cohen (Count 16); (3) Grand Theft in violation of Penal Code section 487(1) in that on or about May 31, 1985, petitioner, Mehrdad Tehrani, and Farid Fani did willfully and unlawfully take money and personal property of a value exceeding $ 400 being the property of George Reed (Count *619 17); (4) Receiving Stolen Property in violation of Penal Code section 496(1) in that petitioner did on or between December 23, 1983 and June 4, 1984, willfully and unlawfully conceal or aid in concealing a 1981 Cadillac Eldorado which had been stolen or obtained by extortion (Count 21); (5) Grand Theft of Personal Property in violation of Penal Code section 487(1) in that petitioner, Mehrdad Tehrani, Farid Fani and Ebrahim Tehrani did on or about May 30, 1985, willfully and unlawfully take money and personal property of a value exceeding $ 400 being the property of Patricia Sullivan (Count 24); (6) Grand Theft of Personal Property in violation of Penal Code section 487(1) in that petitioner and Farid Fani did on or about February 4, 1984, willfully and unlawfully take money and personal property of a value exceeding $ 400 being the property of Brian Frasquillo (Count 25); (7) Grand Theft of Personal Property in violation of Penal Code section 487(1) in that petitioner and Jahangir Zohdi did on or about July 30, 1985, willfully and unlawfully take money and personal property of a value in excess of $ 400 being the property of Dennis Roland (Count 27); (8) Grand Theft of Personal *620 Property in violation of Penal Code section 487(1) in that petitioner did on or about April 16, 1985, willfully and unlawfully take money and personal property of a value in excess of $ 400 being the property of John Rumble (Count 28). On December 3, 1987, petitioner entered a plea of nolo contendere to Counts 15, 16, 25, and 28 of the felony complaint and the other counts in which he was named (Counts 17, 21, 24, and 27) were dismissed as to him. At the time of trial of this case, March 4, 1988, petitioner had not been sentenced on his pleas of nolo contendere to the four counts. However, under section 1016 of the California Penal Code, the effect of a plea of nolo contendere to a felony is the same as a plea of guilty for all purposes. In 24 of the other 25 counts set forth in the felony complaint filed by the District Attorney in May of 1986, one or more of the defendants other than petitioner were charged with various felonies committed between November 19, 1983, and November 30, 1985, including Receiving and Concealing Stolen Automobiles in violation of California Penal Code section 496(1) (12 counts); Grand Theft of Money or Personal Property in violation *621 of California Penal Code section 487(1) (9 counts); Presentation of False Insurance Claims in violation of section 556(a) of the California Insurance Code (2 counts); and Perjury by Declaration in violation of section 118 of the California Penal Code (1 count). In the remaining count of the felony complaint (Count 32), all of the defendants other than petitioner were charged with violating section 182(1) of the California Penal Code in that on and between November 1, 1983 and August 1, 1985, they conspired with each other and with another person or persons to commit Grand Theft under section 487(1) of the California Penal Code and sections 556(a)(1) and 556(a)(2) of the California Insurance Code by using "an automobile-salvage business under the name of Universal Enterprises to purchase wrecked motor vehicles from salvage yards * * * so that their vehicle identification numbers and certificates of title could be placed upon stolen automobiles received by the defendants, masking the identity of these automobiles as stolen property * * * [which] automobiles were then used by the defendants and sold to third parties upon the representation that these automobiles *622 were lawfully possessed by the defendants." At trial petitioner admitted that during 1983 and 1984 he knew Mehrdad Tehrani, Ebrahim Tehrani, Ali Sabbagh, and Farid Fani, but denied that he participated with any of them in the various illegal activities set forth in the felony complaint. According to petitioner, his involvement with these individuals was limited to the following: (1) In 1983 Farid Fani and his brother were in the business of importing rugs and clothing and they encouraged petitioner to enter the business with them. Petitioner agreed to enter the business and as a result he and Farid Fani opened a joint checking account which they equally shared at Progressive Savings and Loan Association. The account, number XX-XX288-9, was opened on April 1, 1983, and continued through the end of 1983. (2) Through Farid Fani petitioner met Mehrdad Tehrani when petitioner was looking for a house to rent. Mehrdad Tehrani helped petitioner locate and rent the house at 5811 Donna Avenue which was next door to where the Tehranies lived. Petitioner bought and sold some cars at auction using a dealers license which Mehrdad Tehrani had. The dealers license was issued in the name *623 of Universal Enterprises but it was actually owned by Ali Sabbagh. Petitioner understood that Mehrdad Tehrani had authority from Mr. Sabbagh to use the license. Petitioner knew that the VINs on some of the cars which Mehrdad Tehrani bought or sold had been removed or switched. He was allegedly unable to recall when he first found out about the alteration or switching of VINs on vehicles but he admitted that it was no later than 1984. During 1983 and 1984 petitioner was aware that the dealers license issued in the name of Universal Enterprises was being used by individuals other than himself and Mehrdad Tehrani. (3) In 1984 petitioner invested about $ 18,000 in an apartment house which was being developed by Ali Sabbagh. In repayment of his investment, petitioner received from Ali Sabbagh one "good" check for $ 2,000 and two "bad" checks for about $ 12,000. Petitioner then received a car from Sabbagh or "his associates" and was told by Sabbagh that "when you sell it you can keep $ 7,000" and according to petitioner "he paid me the rest of it [the $ 18,000] with a check which was not good." Petitioner's claim that his participation was limited to the above was specifically *624 contradicted by Sergeant Lovold who stated that his investigation revealed that petitioner "was heavily involved; one of the key players," in the illegal activities. During 1983 and 1984 petitioner received rent in the amount of $ 950 per month from David Bencie and Judith Andres for a house located at 12601 Hart Street, North Hollywood. In January of 1983 petitioner sold a Persian rug which he had brought with him from Iran for about $ 2,000. During each of the years 1983 and 1984 petitioner sold at least two cars for $ 10,000 or more for each car. During part of 1983 petitioner was employed by a messenger service. Petitioner maintained no records of the amount received from the messenger service, as rent, or from the sale of rugs and cars during 1983 and 1984. At trial he was also unable to produce any record of the cost of the rugs and cars sold during 1983 and 1984 or of any rental expenses. During 1983 and 1984 petitioner handled every transaction with respect to the following three bank accounts: (1) Checking account number XX-XX595-9 which petitioner had with the Progressive Savings and Loan Association, Tarzana, California. This account continued throughout 1983 *625 and 1984. (2) Checking account number XX-XX550-1 which petitioner had with Bank Leumi, Encino, California. This account was opened in December of 1983 and continued through December of 1984. (3) Checking account number XX-XX548-3 which was in the name of petitioner's parents, Nejat Marghzar and Jamileh Beral, with Bank Leumi, Encino, California. All transactions in this account during 1983 and 1984 were handled by petitioner as attorney in fact under a power of attorney from his parents dated August 30, 1979. The account was opened on December 19, 1983, and continued through December of 1984. Petitioner's mother can neither read nor understand English. His father with great difficulty can understand a small amount of English. They visited in California in 1979 and moved there in 1985. In August of 1984 Bank Leumi, at petitioner's request, advised the Department of Immigration and Naturalization that the balance in this account belonged to petitioner. In June of 1985, at his request, the bank advised the German and Swiss consulates that he was the owner of the account. During 1983 petitioner had a one half interest in the checking account number XX-X428-9 which he shared *626 with Farid Fani at Progressive Savings and Loan Association. This account was opened in April of 1983 and closed in December of 1983. Copies of the monthly statements, cancelled checks, and deposit slips associated with all four of the above accounts for 1983 and 1984 were obtained by respondent from the banks involved and are in the record. These documents reflect that during 1983 and 1984 one half of the monthly deposits made to the joint account which petitioner had with Farid Fani at Progressive Savings and Loan, plus all of the monthly deposits to the other three bank accounts, totaled as follows: Month
1983
1984
January
$ 20,100.00
$   2,900.00
February
21,325.00
8,250.00
March
10,622.00
13,689.00
April
27,550.00
13,170.00
May
23,569.50
5,460.00
June
10,100.00
27,000.00
July
19,422.50
12,200.00
August
11,400.00
82,593.00
September
1,450.00
28,450.00
October
6,450.00
8,797.00
November
4,400.00
1,300.00
December
43,800.00
4,600.00
Total
$ 200,189.00
$ 208,409.00
The records obtained from the banks on the four accounts also reflect that during 1983 and 1984 petitioner at times received cash which he did not *627 deposit and interest which was credited to one or more of the accounts. For each month during 1983 the total of cash received and not deposited and the total of interest credited to the accounts were as follows: Cash Received
Interest
Month
Not Deposited
Credited
January
$    21.00    $  39.00 February
--      97.00 March
3,652.00    101.00 April
58.00    28.00 May
--      98.00 June
--      35.50 July
44.00    45.00 August
--      41.50 September
--      13.00 October
--      9.50 November
--      7.00 December
--      25.00 Total
$ 3,775.00    $ 539.50 For each month during 1984 the amounts of cash received and not deposited and interest credited to the accounts were as follows: Cash Received
Interest
Month
Not Deposited
Credited
January
--
$    73.00
February
$  5,250.00
84.00
March
800.00
57.00
April
--
61.00
May
5,000.00
96.00
June
656.00
122.00
July
50.00
55.00
August
207.00
261.00
September
2,000.00
1,103.00
October
19.00
53.00
November
--
36.00
December
--
34.00
Total
$ 13,982.00
$ 2,035.00
*628 From the records obtained from the banks on the four bank accounts and from petitioner's statements before and at trial, respondent was able to identify certain deposits which were made with funds from nontaxable sources such as transfers between accounts, repayment of loans to petitioner, and redeposits. The deposits made during 1983 which respondent was able to identify as being made from nontaxable sources are as follows: NonTaxable
Month
Deposits
January
--
February
$    375.00 *
March
--
April
300.00 **
3,500.00 ***
May
3,339.00 **
June
--
July
--
August
250.00 ***
September
--
October
--
November
--
December
10,000.00 ***
Total
$ 17,764.00
The deposits made during 1984 which respondent was able to identify as being made from nontaxable sources are as follows: NonTaxable
Month
Deposits
January
--
February
--
March
$   3,400.00 ***
1,000.00 *
April
1,000.00 *
May
2,000.00 ***
June
2,000.00 **
July
--
August
12,000.00 ***
32,000.00 ***
September
14,000.00 ***
October
10.00 **
5,000.00 ***
November
--
December
2,000.00 ***
Total
$ 74,410.00
*629 From his analysis of the bank statements, cancelled checks, and deposit slips obtained from the banks on the four bank accounts under consideration, respondent determined that petitioner had taxable incomes in 1983 and 1984 of $ 186,740 (rounded) and $ 150,016, respectively, determined as follows: 1983
1984
Total deposits to accts.
$ 200,189.00
$ 208,409.00
Plus cash received not deposited
3,775.00
13,982.00
Plus interest credited to accts.
539.50
2,035.00
Total
$ 204,503.50
$ 224,426.00
Less nontaxable deposits
17,764.00
74,410.00
Taxable income
$ 186,739.50
$ 150,016.00
Deficiencies
Bank deposits are prima facie evidence of the receipt of income. Estate of Hague v. Commissioner, 132 F.2d 775 (2d Cir. 1943), cert. denied 318 U.S. 787 (1943); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Respondent's use of bank deposits to compute the income of a taxpayer who fails to maintain or produce proper records has long been sanctioned by the Courts. Halle v. Commissioner, 175 F.2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946), *630 cert. denied 338 U.S. 949 (1950). Once respondent has demonstrated, as in this case, that a taxpayer had or controlled unexplained bank deposits during the years under consideration in excess of his reported income, the taxpayer has the burden of proving that the unexplained deposits were made with nontaxable funds. Reaves v. Commissioner, 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961). In the case before us, respondent has determined the total deposits made to four bank accounts maintained by or under the control of petitioner during 1983 and 1984. Two of the accounts, account number XX-XX595-9 at Progressive Savings and Loan, and account number XX-XX550-1, at Bank Leumi, were petitioner's own. His account number XX-XX595-9 was active throughout both years. His account number XX-XX550-1 was active from December 1983 through December 1984. Account number XX-XX548-3 at Bank Leumi was opened by petitioner on December 19, 1983, in the name of his parents and every transaction in the account from that date through the end of 1984 was handled by petitioner, purportedly under a power of attorney from his parents dated August 30, 1979. *631 Inasmuch as this account was under the complete control of petitioner and he personally handled all transactions made in the account during 1983 and 1984 and claimed ownership of the account in 1985, we are satisfied that respondent correctly included its deposits in the computation of petitioner's income in 1983 and 1984. The only evidence in the record to the contrary is petitioner's vague and uncorroborated testimony that the deposits were made with funds which belonged to his parents. We, however, are under no compulsion to find as a fact a self-serving explanation of a transaction made by a taxpayer in the absence of any corroboration, especially where as here, the transaction occurred under generally suspicious circumstances including participation by the taxpayer in an illegal activity. The fourth account is joint account number XX-X428-9, which petitioner shared with Farid Fani at Progressive Savings and Loan from April through December of 1983. At trial petitioner admitted he had a one half interest in this account and pursuant to such admission respondent has correctly used 50 percent of the deposits made to the account during its existence in the computation of petitioner's *632 income for 1983. At trial and on brief petitioner contends that respondent failed to include in his computation of petitioner's income certain additional transfers between the accounts, withdrawals and redeposits to the accounts, and repayment of loans received by petitioner from third parties. However, after a review of the entire record we are satisfied that it contains no support for petitioner's contention that he is entitled to any further adjustments for transfers, redeposits, or loan repayments. In fact, we are convinced that respondent adjusted his computation for every item of such nature which petitioner even vaguely referred to in his testimony. Consequently, we conclude that there is no basis for making any further adjustment for such items. Petitioner further contends that the unexplained deposits in respondent's computation were made in part from gifts received from his father. In support of this contention he relies for the most part upon his own testimony. However, here too we find his testimony to be so vague and inconclusive that we can give it no weight in the absence of some corroboration. In an attempt to corroborate his testimony regarding the alleged *633 gifts, petitioner insisted upon calling his father as a witness even though, in a conference in chambers with petitioner, his father, and respondent's counsel, the Court repeatedly warned petitioner that it would be difficult if not impossible to understand the father without the assistance of an interpreter. Nevertheless, petitioner refused to obtain an interpreter. Even with considerable assistance by petitioner including some translation from English to Farsi and vice versa the witness was unable to understand and answer most questions put to him. From the record of his attempt to testify, the most we can glean with any certainty is that at some point in time the father obtained some amount of money from the sale of a business, a house and a car in Tehran and sent some part of the proceeds from such sales to petitioner in some roundabout way through third parties. It is impossible from his testimony to make any specific determination as to when the assets were sold, how much was obtained from the sale of the assets, the amount, if any, that was sent to petitioner, and how much petitioner received, if any, after deducting the cost of making the admittedly illegal transfer of *634 funds. As a result, we cannot consider the father's testimony as being of any substantial help to petitioner because, while it appears that funds in some unknown amount were given to petitioner by his father, we are unable to determine how much was given or if the gifts were made during the years in dispute. We conclude, therefore, that no specific adjustment can be made to respondent's determination for gifts received by petitioner from his father. With regard to illegal activities as being the source of petitioner's deposits, we are satisfied and so find that throughout 1984 petitioner was involved in the automobile thefts and fraudulent insurance claims being carried on by Mehrdad Tehrani and his associates and that such activities generated taxable income to petitioner which was deposited in the bank accounts owned or controlled by petitioner. However, the record as a whole does not contain any evidence of such illegal activities prior to November 1, 1983. We conclude, therefore, that on this record such illegal activities or other taxable events were not the source of any deposit made to petitioner's two personal accounts (account number XX-XX595-9 at Progressive Savings *635 and Loan and account number XX-XX550-1 at Bank Leumi) and the account in the name of his parents (account number XX-XX548-3 at Bank Leumi) prior to November 1, 1983, and we conclude that any deposit made to these three accounts prior to November 1, 1983, should be removed from respondent's computation. However, from petitioner's admissions at trial, we conclude that one half of the deposits made to the joint account with Farid Fani should remain in respondent's computation and that his computation for 1983 should be further adjusted upward for rental income in the amount of $ 950 per month for January through October of 1983, income in the amount of $ 20,000 from the sale of two cars, and income in the amount of $ 2,000 from the sale of a Persian rug. Fraud
Respondent has the burden of proving by clear and convincing evidence that some part of an underpayment for each year is due to fraudulent acts of petitioner. Section 7454(a); Rule 142(b). Wilson v. Commissioner, 76 T.C. 623 (1981); Stone v. Commissioner, 56 T.C. 213 (1971). Respondent's burden is met if it is shown by such evidence that petitioner intended to evade taxes known to be *636 due by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The presence or absence of fraud is a question of fact to be determined from a consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Since direct evidence of a fraudulent intent is seldom available, respondent may meet his burden of proof with circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941). The taxpayer's entire course of conduct may be used to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213 (1971). Petitioner's failure to file income tax returns for 1983 and 1984, standing alone, is not *637 proof of fraud. Beaver v. Commissioner, 55 T.C. 85 (1970). However, the failure to file returns for the years in question is one of the circumstances which can be considered as evidence of a fraudulent intent. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Gemma v. Commissioner, 46 T.C. 821, 834 (1966). See also Afshar v. Commissioner, T.C. Memo. 1981-241, affd. in an unpublished opinion 692 F.2d 751 (4th Cir. 1982), cert. denied 461 U.S. 928 (1983), where we concluded that a failure to file returns is persuasive circumstantial evidence of fraud. Another circumstance which can be used as some evidence of fraud in this case is petitioner's failure to report substantial amounts of income for two years. Lollis v. Commissioner, 595 F.2d 1189, 1191-92 (9th Cir. 1979); Wilson v. Commissioner, 76 T.C. 623, 633 (1981). Even the omission of a large amount of income for a single year has been considered evidence of fraud. See Piazza v. Commissioner, T.C. Memo. 1985-222. In this case we are convinced that petitioner, a reasonably intelligent *638 and well educated young man, was aware of his duties with respect to the payment of income taxes, but deliberately failed to keep records, file returns, and report and pay the income tax on a substantial amount of income in each of the two years before us. Furthermore, we have found that during such years he was engaged in an illegal activity, maintained a substantial bank account over which he had complete control in the name of his parents, and frequently used large amounts of cash in the conduct of his activities. Consequently, respondent's determination with respect to the additions to tax for fraud is sustained because from all of the foregoing and from the record as a whole, we are satisfied and so find that respondent has clearly and convincingly established that for each of the years 1983 and 1984 petitioner fraudulently failed to file a return, report his income, and pay the income tax due with respect thereto. In view of our conclusion with respect to the issue of fraud we need not consider the alternative determinations made by respondent with respect to the additions to tax under section 6653(a)(1) and (2) and section 6651(a)(1). Addition to Tax Under Section 6654 *639 for Failing to Make Estimated Tax Payments
The addition to tax under section 6654 is mandatory unless the taxpayer can demonstrate that he comes within one of the computational exceptions set forth in section 6654(e), none of which are present here. Baldwin v. Commissioner, 84 T.C. 859, 871 (1985); Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). In the consideration of the addition to tax under section 6654 extenuating circumstances are not relevant and no inquiry is to be made with regard to reasonable cause or extenuating circumstances. Baldwin v. Commissioner, supra at 871; Bacur v. Commissioner, 66 T.C. 817, 824 (1976). Furthermore, petitioner has failed to address this issue and it is assumed that he has abandoned the same. Therefore, respondent's determination with respect to the addition to tax under section 6654 is sustained. Addition to Tax Under Section 6661 for Substantially Understating Income Tax
In his notice of deficiency respondent determined that petitioner was liable for the ten percent addition to tax which was then contained in section 6661 for substantially understating *640 his income tax for each of the years 1983 and 1984. In his amended answer respondent seeks to increase the addition to tax to 25 percent of the underpayment as retroactively provided in section 8002 of the Omnibus Budget Reconciliation Act of 1986 Pub. L. 99-509, 100 Stat. 1951. Without regard to which party has the burden of proof with respect to the correct percentage of the addition to tax under section 6661, it is apparent from the record as a whole that respondent has established that petitioner's understatement in each year was substantial, and therefore we sustain respondent's determination that petitioner is liable for the addition to tax under section 6661 at the rate of 25 percent of the underpayment. See Karpa v. Commissioner, T.C. Memo. 1989-535. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. 50% of the interest due on $ 82,893.00 ** 50% of the interest due on $ 62,943.00
* 50% of interest on $ 17,196.00. ** 50% of interest on $ 60,142.00.↩
*. Loan repayment ** Redeposit *** Transfer↩
*. Loan repayment ** Redeposit *** Transfer↩