ESTATE OF MARY R. SPENCER, Deceased, C/O CHARLES H. SPENCER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLES H. SPENCER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Spencer v. Commissioner
Docket Nos. 106-84, 114-84.
United States Tax Court
T.C. Memo 1986-408; 1986 Tax Ct. Memo LEXIS 198; 52 T.C.M. (CCH) 353; T.C.M. (RIA) 86408; September 2, 1986. *198 During 1976, P formed the Greenville Church of the Commandments and purportedly transferred all of his income and assets to the church. P filed no income tax returns for 1976 and 1977 and made several attempts to conceal or prevent an examination of his financial records. Held, P's conduct constituted fraud within the meaning of sec. 6653(b), I.R.C. 1954. Joe Alfred Izen, Jr., for the petitioners. James E. Polk, for the respondent. SIMPSON
*199 MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in, and additions to, the petitioners' Federal income taxes as follows: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6653(b)
Sec. 6654
Petitioner
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
Estate of
1976
$ 3,594.00
$898.50
$179.70
$ 134.14
Mary R.
Spencer
Charles H.
1976
$34,065.84
$17,032.92
$1,271.34
Spencer
1977
$88,188.00
$44,094.00
$3,128.92
Most of the issues in this case have been conceded by the petitioners; the only issue remaining for decision is whether the petitioner Charles H. Spencer is liable for the additions to tax under section 6653(b) for fraud. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. [2]
*200 The petitioner, Charles H. Spencer, maintained his residence in Greenville, Tex., at the time of filing his petition in this case. Mary R. Spencer (the decedent) and Charles H. Spencer were married and resided in the State of Texas from January 1, 1976, until her death on June 9, 1976. The executor of her estate is Dr. Spencer. He will sometimes be referred to as the petitioner. The petitioner attended medical school at the University of Virginia and practiced general medicine for several years. He then went to Dallas to receive training in the specialty of radiology; thereafter, he went into practice in Greenville, Tex. In Greenville, the petitioner performed his services as a physician and radiologist through his wholly owned corporation, Spencer Radiology Association (the association). On July 1, 1971, the association entered into a written agreement to provide radiology services for the Greenville Hospital District. This agreement remained in force until January 1, 1976. Sometime in 1976, the petitioner liquidated the association. Prior to 1976, the petitioner filed proper income tax returns, both in his individual capacity and as president of the association. For *201 1973 through 1975, he utilized a certified public accountant to prepare and file such income tax returns. In late 1975 or early 1976, the petitioner requested that the accountant return his income tax records. The petitioner's purpose for demanding these records was to prevent the Internal Revenue Service from obtaining information concerning his tax-related activities. The petitioner filed no Federal income tax returns for 1976 and 1977 for himself; nor did he file a Federal income tax return for the decedent for 1976. In 1982, the petitioner entered a plea of guilty for the willful failure to file his income tax return for 1977. He served a 9-month sentence for such crime.After he was released, he filed "Fifth Amendment" returns for 1976 through 1980; on each such return, he claimed the Fifth Amendment and included no information concerning his income or deductions. On January 9, 1976, the petitioner filed articles of incorporation with the State of Texas for the Greenville Church of the Commandments (the church). According to such articles, the church was established as a non-profit organization for the purposes of maintaining a church of gospel, providing places of public *202 meditation, maintaining and conducting a school for religious instruction of children and adults, establishing and maintaining libraries, reading rooms, and book stores for the sale of publications relating to the teaching of the church, establishing rest homes for the elderly, orphans, and others, supporting religious matters in the evangelization of the world, and other things. However, the petitioner never intended his church to serve such purposes. The church had no congregation, no members (other than the petitioner, his wife, and his daughter), no regular worship services, and no sacramental services wherever performed. The petitioner's wife and daughter were ill, and he claimed that by establishing the church he could save taxes and use the funds of the church to care for his wife and daughter. On January 7, 1976, the petitioner filed the vow of poverty with the County Clerk's office of Hunt County, Texas, and on February 19, 1976, he filed a quit claim deed with the same office. In the quit claim deed, the petitioner purported to assign all of his interest in his residence to the church. The petitioner's vow of poverty purported to require him to transfer all of his earthly *203 possessions to the church and all income thereafter; it also required the church to take care of his "temporal needs." After filing these documents and making the purported contributions and donations to the church, the petitioner continued living in his home and began paying all of his personal expenses out of the church's funds and assets. The petitioner admittedly had unfettered control over all the assets purported to have been given by him to the church. In fact, the petitioner was able to transfer funds from the checking account of the church in the amount of $79,000 to a Swiss bank during 1977; he claims that such funds have now been "lost." After 1975, the petitioner changed his form of carrying on his business; thereafter, he performed his services for the Greenville Hospital District as an individual. The checks in payment for his services were deposited into the checking account of the church. The petitioner paid several individuals to advise him on how to establish his own "church." These individuals also described the tax advantages which they claimed that he could secure by creating the church. The petitioner was told that the use of checks printed on red paper *204 would conceal the financial activities of the church, since the bank could not make copies and keep records of them. For a time, he used such red checks to conceal the financial activities of the church, but the bank did not allow him to continue to use them. On his Federal income tax return for 1975, the petitioner claimed a charitable contribution deduction in the amount of $21,750.00 for a 1974 "maule" aircraft allegedly donated to the church. He claimed that the aircraft cost $31,965.80 in 1974, but his actual cost of the aircraft was only $21,000.00. In 1974, he borrowed $18,000 from Citizens National Bank of Greenville to procure a cashier's check which was used to purchase such aircraft. The petitioner repaid the $18,000 loan on February 5, 1976, with a cashier's check obtained with funds withdrawn from the checking account of the church. On March 23, 1976, the petitioner also withdrew $9,660 from the church's checking account to procure the cashier's check used to pay another loan made to him on January 17, 1974. In his notice of deficiency, the Commissioner determined that Dr. Spencer received total income in the amount of $97,173 in 1976 and $179,652 in 1977. The Commissioner *205 determined that the income earned in 1976 was community income for the period Mrs. Spencer was living, and therefore he allocated $79,589 to the petitioner as his share of the community income for 1976. The Commissioner also determined that Dr. Spencer was liable for the addition to tax for fraud under section 6653(b) for 1976 and 1977 and that he was liable for the addition to tax under section 6654 for failure to pay estimated taxes for such years. In his notice of deficiency issued to the Estate of Mary R. Spencer, the Commissioner determined that the decedent received community income in the amount of $17,584 during 1976. In addition, he determined that the estate was liable for the addition to tax under section 6651(a) for failure to file a return, the addition under section 6653(a) for underpayment of tax due to negligence or intentional disregard of rules and regulations, and the addition under section 6654(a) for underpayment of estimated taxes. OPINION The petitioners have the burden of proving that they are not liable for the deficiencies determined by the Commissioner. Rule 142(a), Tax Court Rules of Practice and Procedure[3]; Welch v. Helvering,290 U.S. 111, 115 (1933). *206 They also have the burden of proving that they are not liable for the additions to tax under sections 6651(a), 6653(a), and 6654(a). Abramo v. Commissioner,78 T.C. 154, 163 (1982) (sec. 6651(a)); Bixby v. Commissioner,58 T.C. 757 (1972) (sec. 6653(a)); Mitchell v. Commissioner,51 T.C. 641, 648 (1969), revd. 430 F.2d 1 (5th Cir. 1970), revd. 403 U.S. 190 (1971) (sec. 6654). The petitioners presented no evidence or arguments to refute the Commissioner's determinations with respect to the deficiencies and the additions to tax under sections 6651(a), 6653(a), and 6654(a). They apparently intend to concede all such issues, and in any event, we must sustain the Commissioner's determinations with respect to such issues since the petitioners have failed to carry their burden of proof. The only issue remaining for decision by the Court is whether Dr. Spencer is liable for the addition to tax for fraud. Section 6653(b) provides that if any part of any underpayment is due to fraud, there shall be added to the tax an amount *207 equal to 50 percent of the underpayment. The Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651, 654-655 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). This burden will be carried by the Commissioner if he shows that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 111-112 (1956). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Grosshandler v. Commissioner,75 T.C. 1 (1980); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).Fraud is never presumed, but rather must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85, 92 (1970). *208 Fraud may be inferred from any conduct, the effect of which would be to mislead or conceal the existence of a tax liability. Spies v. United States,317 U.S. 492, 499 (1943). Circumstantial evidence is permitted where direct evidence of fraud is not available, and fraud may be inferred where an entire course of conduct establishes the necessary intent. Rowlee v. Commissioner,80 T.C. 1111 (1983); Stone v. Commissioner,56 T.C. 213 (1971). Evidence of prior and subsequent similar acts reasonably close to the years at issue may be considered. United States v. Johnson,386 F.2d 630, 631 (3d Cir. 1967). In the present case, the evidence in the record clearly and convincingly establishes that the petitioner's underpayment of income taxes for 1976 and 1977 was due to fraud. He testified that he and his family found the established churches to be unsatisfactory. However, the alleged dissatisfaction with the religious services of the established churches does not explain or justify the petitioner's creation of his own church and the purported transfer of his assets and income to that church. He admitted that, at least *209 in part, he established the church and transferred his income and assets to it to secure tax exemption. He sought to justify his objective of seeking tax savings by the fact that he had unusually heavy family obligations; nevertheless, his testimony makes clear that his arrangements were designed to avoid the payment of taxes. In fact, he continued to exercise complete control over his income and assets, and he continued to use them for the benefit of himself and his family. Thus, we find that the creation of the church and the purported transfer of income and assets to it was a sham undertaken to avoid the payment of taxes on his income. See Stephenson v. Commissioner,79 T.C. 995 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983). For 1976 and 1977, the petitioner filed no Federal income tax returns. While failure to file is not, in and of itself, conclusive evidence of fraud, such failure may properly be considered in connection with other facts in determining whether an underpayment of tax is due to fraud. *210 Habersham-Bey v. Commissioner,78 T.C. 304, 312 (1982); Grosshandler v. Commissioner,75 T.C. at 19. In the present case, the petitioner was a highly educated individual, and as evidenced by his filing of proper Federal income tax returns in prior years, he was fully aware of his obligation to file returns for 1976 and 1977, to report all of his income thereon, and to pay tax on such income. The sham transfers to the church did not mitigate his obligations; by such transfers, the petitioner sought to cloak his activities with tax exemption, but his attempts to conceal his activities reveal his own doubt about the success of his scheme if the facts should come to light. In 1975, the petitioner retrieved his records from his accountant so that the IRS could not secure information about him from the accountant. In 1976, the petitioner used red checks that could not be copied by the bank and the IRS, until the bank refused to accept such checks. In 1977, the petitioner made a substantial transfer of funds to a Swiss bank. Transfers to a Swiss bank may be made for altogether appropriate business reasons, but it is well known that at times they are *211 made to eliminate any trail of income. In view of the petitioner's other efforts to conceal his business activities, that possible reason for the transfer to the Swiss bank must be considered by us. These activities all show a taxpayer who is familiar with his obligation to report income and pay taxes thereon and who is aware of the techniques that may be used to trace income and is attempting to frustrate the use of such techniques. The scheme involving the alleged gift of an aircraft to the church was begun in 1975, but it carried over until 1976. Moreover, it reveals the petitioner's attitude toward the payment of taxes. He misrepresented the cost of the aircraft and claimed that it was worth more than the original price paid for it. What is more, he had not paid that price; he had borrowed $18,000, and he repaid that loan out of funds allegedly belonging to the church. There is a question as to whether his church had even been created in 1975, but in any event, it is altogether clear that he claimed a deduction grossly in excess of any to which he was entitled. On this record, we hold that the petitioner is liable for the additions to tax under section 6653(b) for 1976 *212 and 1977. Because of that holding, we need not consider the Commissioner's alternative claim that the petitioner is liable for the additions to tax under sections 6651(a) for failure to file returns and under section 6653(a) for negligence or intentional disregard of rules and regulations. Decisions will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. The petitioners in their brief in answer failed to set forth any objections to the Commissioner's requested findings of fact. Because of the failure to comply with Rule 151(e)(3), Tax Court Rules of Practice and Procedure↩, the Commissioner requests that we adopt his requested findings. We decline to do so, but we will base our findings of fact upon the evidence and testimony of record.
3. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩